# In The Matter Of:

*DURWIN ABBOTT v.*

*CAPTAIN PERCY BABIN, ET AL*

---

*WARDEN STEVE RADAR*

*March 22, 2013*

---

*Associated Reporters Incorporated*

*(225) 216-2036*

Original File RADAR2.TXT

Min-U-Script® with Word Index

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

* * * * * * * * * * * * * * * *

| | |
|---|---|
| DURWIN ABBOTT | CIVIL ACTION NO. 12-631 |
| versus | JUDGE BRADY |
| CAPTAIN PERCY BABIN, ET AL | MAGISTRATE RIEDLINGER |

* * * * * * * * * * * * * * * *

The testimony of WARDEN STEVE RADAR, taken by the plaintiff pursuant to notice and the within stipulation at Dixon Correctional Institute, 5568 Highway 68, Jackson, Louisiana, beginning at 10:10 a.m. on March 22, 2013.

Before Mark LaCour, Certified Stenomask Reporter, in and for the State of Louisiana.

A. Sure.
Q. On now many occasions?
A. I couldn't name it.
Q. More than ten or less than ten?
A. Officers -- have I checked out officers for use of excessive force? We check that out --
Q. Investigated them on your own for use of excessive force because they've gotten so many ARPs?
A. I couldn't tell you how many. Maybe three or four officers have been alleged to use excessive force or, you know, got a lot of complaints from offenders, or one offender complaining a lot.
Q. And was any of those officers Master Sergeant Tyrone Kilbourne?
A. Yes, he's been alleged to have used excessive force.
Q. By a lot of people?
A. Here again I don't know the numbers of people. He's been alleged by some offenders to have used excessive force.

Q. You told us that there were three or four offenders that stood out in your mind as -- excuse me, strike that. You told me there were three or four officers that stood out in your mind who got multiple complaints of use of excessive force. Do you recall that testimony?

A. Yes.

Q. Is Master Sergeant Tyrone Kilbourne one of those officers?

A. Yes, he was alleged to have used excessive force.

Q. And he's one of the three or four officers that stands out in your mind?

A. Right.

Q. What about Percy Babin?

A. Yes, he was also on that shift and alleged by your client and others to have used excessive force.

Q. What about you told us Stroughter?

A. Stroughter.

Q. Is he one of those three or

four?

A. Yeah, he's on that shift.

Q. What about Babin? We talked about Babin, didn't we? What about Spangler?

A. No.

Q. So it's Babin, Kilbourne and Stroughter?

A. That's been alleged, right.

Q. That's three of the four officers that came to your mind, is that correct?

A. Yes.

Q. And who's the fourth?

A. That's three or four. I guess it was three. I guess that's the three.

Q. Why is Kilbourne no longer --

A. He resigned on his own. I have no idea.

Q. When you say he resigned on his own how did that come about?

A. I guess he went to the HR office and resigned.

Q. Was it a surprise or was it something that --

A. It was a surprise to me that he quit.

Q. Do you know whether any of his supervisors had spoken to him about quitting before he quit?

A. I have no idea. I don't know.

Q. I heard that he was terminated or fired. Is that false?

A. That is false.

MR. ANIMASHAUN:

Can we go off the record for a minute?

MS. GRODNER:

I'm just about finished. I think -- I'm just basically checking over my notes now if you want to just let him go and we can start the next one. Let me just make sure I've covered everything I've needed to cover.

BY MS. GRODNER:

Q. I just want to go over about the major's office. You said the major's office could be used to question offenders?

A. Yes.
Q. As part of a disciplinary process or as --
A. At any time.
Q. At any time.
A. A major could bring in an orderly and say, man, have you been cleaning the dogs? You know, he could talk to an offender for any reason in the major's office.
Q. Is it appropriate to discipline offenders in the major's office?
A. No.
Q. I have one more question to follow-up on, admin seg. What are the steps, policies or procedures that are taken before a person is taken to admin seg? I mean can an officer just walk out on the grounds, grab an inmate and say you're going to admin seg right now or is there paperwork that has to be filled out or there's a shift -- I think you told us that there were shift supervisors that have to approve the use of chemical sprays. Do you recall that?

A. Right.
Q. Does a shift supervisor also have to approve of the taking an inmate to admin seg? How does that work?
A. The shift supervisor would approve taking the guy to the cell block, that's correct.
Q. So the cell block and admin seg those are the same thing?
A. Right, administrative seg is the beginning portion. When one is placed in the cell block he goes to administrative seg initially.
Q. Okay. So every cell block has an admin seg portion to it?
A. Not really.
Q. Okay.
A. We have one administrative seg here and it happens to be on compound one in cell block C. So one goes in there and then he can be transferred to the cell block B. But initially they always go to administrative seg and then a determination is made whether or not to let them out or not.

like a beating or something she will advise me so that I know initially or some real serious ARP or someone makes a real serious allegation she will inform me and then send it onto the appropriate department head. But she'll give me a heads up in addition to sending it on to the appropriate department head.

Q. What's the -- do you have a policy and procedure in place for her to do that or it's her discretion?

A. It's her discretion.

Q. Okay. So she at her discretion sends it over to Stevens?

A. Right.

Q. And he does some type of investigation or gathers some paperwork and then he makes a recommendation to you?

A. Right.

Q. And that's typed up on a piece of paper. All you've got to do is sign it?

A. Right, if I agree with it.

Q. If you agree with it based on the paperwork that he gives you with that

piece of paper?

A. Right.

Q. Okay. So in this case that's all you did and all you had, correct?

A. That's right.

Q. And as I understand it you've never done any type of investigation on Master Sergeant Tyrone Kilbourne? Never asked one to be done on him?

A. Like I said we investigate situations as they occur. We looked at allegations they bring forth, and as far as Tyrone Kilbourne's name on an investigation I don't think there is such an animal that there's an investigation strictly on Tyrone Kilbourne. An investigation is on incidents that have occurred.

Q. Have you ever asked other than the ARP process an individual ARP -- strike that. Under any circumstances have you ever asked that Master Sergeant Tyrone Kilbourne be investigated for any reason?

A. No.

Q. What about Percy Babin?

A. No.

Q. What about Stroughter?

A. Stroughter.

Q. Stroughter?

A. No.

Q. What about Stevens, has Stevens ever recommended that they be investigated for any disciplinary purposes?

A. I don't know.

Q. But not to you, is that correct? He's never made the recommendation to you?

A. For disciplinary action?

Q. Yeah, against Babin, Kilbourne?

A. No, he has not.

Q. Or Stroughter? All right, you have to say yes or no?

A. The answer would be no.

Q. Okay. Nothing further.

THE DEPOSITION ENDED AT 11:21 A.M.

* * * * *

R E P O R T E R ' S   P A G E

I, Mark LaCour, Certified Court Reporter, in and for the State of Louisiana, the officer, as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434(b) of the Louisiana Code of Civil Procedure, before whom this sworn testimony was taken, do hereby state on the record:

That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talk overs; that same is the proper method for a Court Reporter's transcription of proceeding, and that the dashes (--) do not indicate that words or phrases have been left out of this transcript.

Also, any words and/or names which could not be verified through reference material have been denoted with the phrase "(inaudible)."

______________________________

Mark LaCour, C.C.R.

# 89054