UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRIN ROBINSON (#158443)** | **CIVIL ACTION** |
| **VERSUS** | |
| **CAPTAIN PERCY BABIN, ET AL.** | **NO.: 12-00629-BAJ-RLB** |

### RULING AND ORDER

Before the Court is the Defendants' **Motion for Summary Judgment (Doc. 57)**, seeking an order from this Court granting summary judgment in their favor on Plaintiff Darrin Robinson's ("Plaintiff") claims of excessive force and an unlawful Fourth Amendment search and seizure. The Defendants also assert that they are entitled to qualified immunity for all of the claims asserted against them. The motion is opposed (Doc. 70.) Oral argument is not necessary. Jurisdiction is proper under 28 U.S.C. § 1331.

### I. Background

On October 5, 2012, Plaintiff, an inmate at Dixon Correctional Institute, filed suit against Defendants Captain Percy Babin ("Defendant Babin"), Warden Steve Radar ("Defendant Radar"), Colonel John Smith ("Defendant Smith"), Major Douglas Stroughter ("Defendant Stroughter"), and Master Sergeant Tyrone Kilbourne ("Defendant Kilbourne"), alleging that he was subject to various violations of his constitutional rights, including an unlawful search and seizure, the unwarranted use

of excessive force, and harassment by prison officials. (Doc. 1.) Plaintiff avers that on December 9, 2011, Defendant Kilbourne removed him the "recreation room" and took him to a dormitory bathroom. (Doc. 57-1, at 3; Doc. 1, at ¶¶ 6-7.) Plaintiff was subsequently directed to remove all his clothing.

Plaintiff asserts that while in the bathroom, Defendants Babin and Kilbourne began a "pretext shakedown" whereby contraband was "planted" on Plaintiff's person. (Doc. 57-1, at 3; Doc. 1, at ¶¶ 8-10.) Defendants aver that contraband was found on the person of Plaintiff. Plaintiff further argues that he was handcuffed and escorted from the bathroom to Defendant Stroughter's office. Plaintiff claims that upon arriving at Defendant Stroughter's office, Defendants Babin, Smith, Kilbourne, and Stroughter converged on him at once kicking and punching him and slamming him against the wall and the floor for about 30 minutes. (Doc 57-1, at 3; Doc. 1, at ¶ 13.) This included using a radio to strike Plaintiff in the head and slamming his body, punching Plaintiff and attempting to smash his ankle, and kicking Plaintiff repeatedly in the head. (Doc. 1, at ¶¶ 16-19.) Plaintiff asserts that Defendants shouted racial epithets at him and threatened additional harm. Finally, Plaintiff alleges that Defendants placed a belt around his neck and tightened it until he lost consciousness. (Doc. 1, at ¶ 20.)

On January 10, 2013, Defendants Babin, Radar, and Smith filed a motion to dismiss claims against them in their official and individual capacities, including a defense of qualified immunity for Defendant Radar. (Doc. 11.) Subsequently, Defendants Stroughter and Kilbourne filed motions to dismiss claims against them, both whom individually asserted claims of qualified immunity. (Docs. 16 and 20.) The

Court's ruling granted the motions dismissing Plaintiff's claims regarding prison policy violations pursuant to 28 U.S.C. § 1983, and dismissing all claims against Defendant Radar. (Doc. 56.) However, the motions to dismiss were denied on all other grounds.

In the instant motion, the remaining Defendants seek summary judgment on Plaintiff's excessive force claim and the Fourth Amendment search and seizure claim, averring that there are no genuine issues of material fact. Additionally, the Defendants assert that, irrespective of any other findings, they are entitled to qualified immunity. (Doc. 57-1, at 1.) Plaintiff opposes the motion for summary judgment, asserting that there is ample evidence to support a claim of excessive force and a Fourth Amendment violation. (Doc. 70, at 1.)[1]

## II. Standard of Review

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, a court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997).

---

[1] The Defendants have submitted supporting affidavits, deposition testimony, Plaintiff's medical records, and various documents on the prison's policies and regulations as supporting evidence for their motion. Plaintiff has submitted supporting affidavits, Plaintiff's medical documents, deposition testimony, articles on health conditions and diagnoses, and other various documents. The Court notes, however, that some of the documents, submitted by both parties, are barely legible. Therefore, they cannot, and will not, be considered by the Court.

3

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Id.* The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled

to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

III. Discussion

The Court has carefully reviewed this matter and finds that the motion must be denied for the reasons advanced herein, as well as the relevant reasons cited in Plaintiff's memorandum in opposition.[2] The Court concludes that there are genuine issues of material fact as to whether the Defendants violated Plaintiff's constitutional rights when they removed Plaintiff from the recreation room on December 9, 2011 and caused him to be strip searched, and also when Plaintiff was handcuffed and brought into Major Stroughter's office for further investigation, which Plaintiff alleges resulted in the brutal and savage beating under unwarranted pretenses. Thus, under Federal Rule of Civil Procedure 56(a), Defendant is not entitled to judgment as a matter of law. The Court reaches this conclusion for several reasons.

IV. Analysis

A. 42 U.S.C. § 1983 Qualified Immunity

The Court notes that all of the remaining Defendants assert a qualified immunity defense. However, after a review of the record, at least two Defendants, Defendant Stroughter and Defendant Kilbourne, already raised the defense in their

---

[2] The Court notes that Plaintiff's memorandum in opposition contains legal analysis on claims that have been previously dismissed by the Court. *See* Doc. 56. In particular, Plaintiff confusingly attempts to rehash arguments against Warden Radar, who has been previously dismissed from this lawsuit, as well as an argument concerning prison policy violations pursuant to 42 U.S.C. § 1983. Again, both of these claims have been dismissed and thus are not considered in the Court's ruling on the motion for summary judgment.

individual motions to dismiss. *See* Docs. 16 and 20. Moreover, the Court's ruling on the motions to dismiss DENIED qualified immunity to the Defendants, based on the obviousness of the alleged conduct and the fair and clear warning that the Fifth Circuit jurisprudence provides. (Doc. 56, at 14.) While the ruling does not explicitly state that the denial is with or without prejudice, "it is well established that a dismissal is presumed to be with prejudice unless the order explicitly states otherwise." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F. 2d 278, 283 n.7 (5th Cir. 1983).³ As such, the Court denies the motion for summary judgment on this defense for Defendants Stroughter and Kilbourne, because those Defendants explicitly raised the defense of qualified immunity in their motions to dismiss. Nevertheless, the Court notes the ambiguity in whether a qualified immunity defense was ever raised with respect to Defendants Babin and Smith. Therefore, the following analysis, concerning qualified immunity only, is applicable to those Defendants only.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.' [T]his provision safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)). "A person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the

---

³ See *Weissinger v. United States*, 423 F.2d 795, 798 n. 4 (5th Cir.1970) (en banc) ("An order of dismissal is an adjudication upon the merits unless the order 'otherwise specifies.'")

authority of state law.'" *Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights; and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

I. **Claim of Excessive Force Pursuant to the Eighth Amendment**

The Supreme Court has held that the "***unnecessary and wanton infliction of pain***...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." (emphasis added) *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotations omitted). The Court has further held that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

Within the prison conditions context, courts are required to ascertain whether the officials involved acted with "deliberate indifference" to the inmates' health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). A court may infer the existence of

7

this subjective state of mind from the fact that the risk of harm is obvious. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). " Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. It is not necessary that a prisoner suffer serious injury when determining whether there is an excessive force violation that constitutes cruel and unusual punishment. *Id.* at 4. It is a factor, but other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 8 (citing *Whitley*, 475 U.S. at 321).

Based on the evidence presented, the Court finds that there are numerous issues of material fact which firmly support a denial of the motion for summary judgment on the basis of this particular claim. The first issue is that the Defendants have yet to offer a conceivable defense justifying their alleged, brutal punishment of Plaintiff on the date in question. The Court understands that the Defendants claim to have found contraband on Plaintiff. However, based on the information in the record and the facts presented, there is scant evidence to suggest that, after the contraband had been confiscated, Plaintiff was a continuing threat to the safety and peace of the prison. Therefore, a fact finder may question whether the additional force and restraint that is the basis of this lawsuit, if true, would have been necessary once Plaintiff was in handcuffs.

Once Plaintiff was restrained in the dormitory bathroom, he was surrounded by several corrections officers who could have monitored Plaintiff, and could easily have ensured that he posed no further risk of danger to anyone else. The Defendants assert that Plaintiff was resistant to verbal commands and, after being escorted to the Major's office for questioning, he "became combative swinging his arms and grabbing the cordless phone off the desk and slamming it to the ground," which required further physical action on their part (Doc. 57-1, at 12.) The Defendants assert that additional personnel assisted in placing Plaintiff in more restraints until he finally was subdued. (*Id.*) Again, the perplexing accusations made against Plaintiff raise the brow of suspicion in this case because, as stipulated by the parties, Plaintiff was in handcuffs at the time. Also, by the Court's count, there were at least six prison officials in the office at the time, which begs consideration of why so many were needed to restrain a single inmate. Thus, while the Court does not question the policies and practices of the prison, it is questionable why such action, in this circumstance, was necessary. Such discrepancies, coupled with Plaintiff's claims that racial slurs were shouted at him and a belt tightened around his neck, render it impossible for the Court to ignore the alarming unconstitutional behaviors asserted against the Defendants.

Moreover, the Court does not find the Defendants' assertion that Plaintiff cannot provide medical evidence of his alleged injuries to be availing. (Doc. 57-1, at 7.) The Defendants assert that Plaintiff's medical records offer nothing more than superficial and *de minimis* injury, which would not indicate a use of excessive force. They further assert that Plaintiff only minimally complained of injuries, that there were no

complaints by Plaintiff nor findings by medical staff that he obtained any ankle injuries, that most of his conditions predate the incident alleged in the complaint, and that there are no objective findings supported by any medical documents in Plaintiff's possession to support unwarranted force. (Doc. 57-1, at 9-10.) The Defendants contend that their medical expert, Dr. Robert Cleveland, will testify that Plaintiff's claims do not support medical findings.

The Court disagrees. In fact, the medical records submitted by the Defendants themselves suggest that, on the date of incident, Plaintiff suffered at least some injuries, including abrasions to his left cheek, right elbow, right shoulder, left shoulder, heel, right knee, and left knee. (Doc. 57-17, at 5.) The medical records also note that Plaintiff complained of having loose front teeth on the same day, for which he was to receive a referral to a Dentist. (*Id.*) Moreover, Plaintiff was prescribed pain medication for his injuries.

On December 12, 2011, three days after the incident, medical records indicate that Plaintiff was seen by a prison physician for neck pain, for which he given an analgesic cream. (Doc. 57-17, at 8.) The Defendants attempt to convince the Court that, because Plaintiff had been treated for neck pain in November 2011, it is likely that the pains he complained on December 12, 2011 are unrelated to his allegedly injuries from the incident on December 9, 2011. (Doc. 57-1, at 7-8.) Albeit Plaintiff may have complained of neck pain before the incident, it is not impossible for him to have aggravated a pre-existing injury if his claims of being attacked with a belt are substantiated. Plaintiff was seen again on December 16, 2011 for dizziness and muscle

spasms, which the medical records indicate that he consistently complained of for several months. 57-17, at 20.) The Defendants contend that Plaintiff's complaint of muscle spasms also predates the December 9, 2011 incident. Nevertheless, Plaintiff contends that in April 2012, he was diagnosed with benign fasciculation syndrome, a condition created by uncontrollable muscle twitching, aggravated by the December 9, 2011 beating. (Doc. 70, at 8.)

The Court does not contest that Plaintiff may have been treated for injuries and illnesses prior to the relevant date in question. Yet, it is certain that Plaintiff was routinely treated for various aches consistent with the injuries alleged from the December 9, 2011 incident.[4] Thus, it is clear that, while the Defendants assert otherwise, there is a genuine issue of fact concerning Plaintiff's injuries. The Supreme Court has held that "significant injury" is not a threshold requirement for stating an excessive force claim, but that the proper inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citations omitted). "When prison officials maliciously and sadistically use force to cause harm . . . 'contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Id.*

---

[4] The Court notes that Plaintiff's medical records indicate he was seen for several different reasons after the date in question, including constipation and pains in the side of his body. See Doc. 57-17. However, the Court only highlights injuries that Plaintiff claims to be consistent with the injuries he suffered on December 9, 2011.

Likewise, there is no set standard for what constitutes an actionable injury. The Fifth Circuit has never directly held that injuries "must reach beyond some arbitrary threshold to satisfy an excessive force claim." *Brown v. Lippard*, 472 F. 3d 384, 386 (5th Cir. 2006) (finding that a non-treating physician's review and conclusion that a prisoner's injuries are *de minimis* does not support a *legal* conclusion that the injuries are *de minimis*).

Taking the facts in the light most favorable to the non-movant, Plaintiff's showing that there were injuries from the date in question, and the Defendant's lack of adequate justification for the actions taken against Plaintiff on the date in question, supports the conclusion that a reasonable fact finder could conclude that a constitutional violation may have occurred. The Defendants' actions, if proven true, were in violation of Plaintiff's clearly established constitutional right to be free from excessive force. As such, the motion for summary judgment on this claim is DENIED, and the Defendants' defense of qualified immunity is DENIED.[5]

## B. Fourth Amendment Fourth and Seizure Violation

In addition, the Court finds that there are genuine issues of material fact relating to Plaintiff's Fourth Amendment Search and Seizure Claim.

---

[5] The Defendants argue that, because Plaintiff has failed to timely disclose a medical expert who could possibly testify as to the cause of Plaintiff's injuries, Plaintiff cannot, and should be precluded from, showing that his injuries were a result of the altercation on December 9, 2011. (Doc. 57-1, at 10.) Yet, the Defendants have not cited to, nor has the Court found, any statute, case, or legal precept to support such a theory. Indeed, the Federal Rules of Civil Procedure do not support such an assertion. Therefore, to the extent that the Defendants seek denial of the motion on these grounds, the motion is DENIED.

According to the Fifth Circuit, "a prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs." *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999). However, the Fifth Circuit has recognized that the Fourth Amendment protects prisoners from searches and seizures that go beyond legitimate penological interests. *Id.*

Moreover, the Fifth Circuit has reiterated that "the Fourth and not the Eighth Amendment governs searches of prisoners," and recognized that a strip search by a prison guard can rise to the level of a Fourth Amendment violation. *Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007) (citing *Moore*, 168 F.3d at 237; *see also Elliott v. Lynn*, 38 F.3d 188, 191 n. 3 (5th Cir.1994). "Searches of prisoners must be conducted in a manner that is reasonable under the facts and circumstances in which they are performed. . . . The test for a Fourth Amendment violation requires the balancing of the need for the particular search and the invasion of rights that are a result of the search." *Id.* (citing *Moore*, 168 F.3d at 237, and *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. " *Bell*, 441 U.S. at 558.

The question presented here is whether the manner in which the search was conducted and the justification for initiating the search withstands the test of reasonableness. Concerning the justification for the search, the Court recognizes that the use of a tip from a confidential informant as reasonable suspicion for strip searches

of inmates has been upheld in certain situations.[6] Nevertheless, Plaintiff's assertion that the Defendants' search was for the sole purpose of placing contraband on his person and to attack him, distinguishes the merits of this case.

The Defendants assert that while the prison's policy authorizes them to commit a strip search of an inmate without the requirement of probable cause or reasonable suspicion, in this case such reasonable suspicion was had, as a confidential informant communicated to Defendant Babin that Plaintiff was in possession of contraband. (Doc. 57-1, at 19.) However, Plaintiff notes that there is no mention of a confidential informant in any of the documents recalling the incident in the record, no official report, or any other supporting document. In fact, the first mention of a confidential informant was during the deposition of one of the Defendants. (Doc. 50.) Nevertheless, the Defendants assert that there was a tip and that it prompted the search. The Defendants also aver that the search was conducted within policy limitations, that Plaintiff was searched in a secluded bathroom, and that he was allowed to keep his undergarments on during the process. For these reasons, the Defendants contend that search was minimally intrusive and within policy. (Doc. 57-1, at 19-20.)

Plaintiff, in opposition, asserts that the Defendants conducted the search for the sole purpose of planting contraband on Plaintiff's person. Plaintiff asserts that after he complied with removing his clothing for the strip search, Defendant Kilbourne "produced a clear plastic bag, and, while [Plaintiff] was not watching, he held it behind

---

[6] See *Wood v. Clemons*, 89 F. 3d 922 (1st Cir. 1996) (where a prisoner strip search was found to be reasonable when two unrelated confidential informants reported that a prisoner visitor was sneaking drugs into a prisoner in baby booties).

[Plaintiff's] sweat shorts." (Doc. 70, at 2.) Plaintiff asserts that he was confused by the situation and attempted to view what was hidden, at which point Defendant Kilbourne began yelling, and two of the Defendants charged Plaintiff, while two other officers stood in the doorway. (*Id.*) Afterwards, Plaintiff asserts that a beeper was activated and he was put to the floor. Plaintiff insists that there was no reason for the Defendants to initiate the search, and that some of the Defendants, in particular, Defendant Babin, Defendant Stroughter, and Defendant Kilbourne have a history "of repeated brutality and harassment of inmates . . ." (Doc. 70, at 3.) Plaintiff insists that he has repeatedly requested a transfer away from the Defendants, to no avail. (*Id.*)

Based on these facts, the Court finds that there is a genuine issue of fact, and that a reasonable fact finder could determine that the search conducted was unreasonable under these circumstances and therefore unconstitutional. While the Court notes that a tip from a confidential informant can constitute probable cause for a search, Plaintiff's allegations of past abuse from the Defendants, the alleged planting of contraband on his person and, most significantly, the alleged use of unwarranted force and brutality on Plaintiff after the search, could give rise to a Fourth Amendment violation. As such, the Defendants' motion for summary judgment on this claim is DENIED and a defense of qualified immunity is DENIED on this claim.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendants' **Motion for Summary Judgment (Doc. 57)** is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent that the Defendants seek to dismiss Plaintiff's claims on qualified immunity grounds, the motion is **DENIED**.

Baton Rouge, Louisiana, this 18th day of June, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**