UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DARREN ROBINSON | : | |
| | : | NO: 3:12-CV-00629-BAJ |
| VERSUS | : | |
| | : | JUNE 18, 2014 |
| CAPTAIN PERCY BABIN, ET AL | : | |

# TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE CHIEF BRIAN A. JACKSON

UNITED STATES DISTRICT JUDGE

==================================================================

A P P E A R A N C E S:

FOR THE PLAINTIFF, DARREN ROBINSON:

DONNA GRODNER, ESQ.
ATTORNEY AT LAW
2223 QUAIL RUN DRIVE
BATON ROUGE, LA 70808

FOR THE DEFENDANTS, PERCY BABIN, ET AL:

MARGARET COLLIER, ESQ.
DAVID SANDERS, ESQ.
ATTORNEYS AT LAW

REPORTED BY: CLARE SMITH-NEELY, CCR

UNITED STATES COURTHOUSE
BATON ROUGE, LA 70801

BY THE CLERK: CIVIL ACTION 12-629-BAJ,
DARREN ROBINSON VERSUS CAPTAIN PERCY BABIN, ET AL.

BY THE COURT: ALL RIGHT. LET ME HAVE COUNSEL FOR THE PLAINTIFF TO ENTER THEIR APPEARANCE AT THIS TIME. MS. GRODNER, PLEASE ENTER YOUR APPEARANCE.

BY MS. GRODNER: THANK YOU, YOUR HONOR. DONNA GRODNER ---

BY THE COURT: WAIT, WAIT, WAIT. LET ME REMIND EVERYONE OF THE RULES OF THIS COURTROOM. COUNSEL AT ALL TIMES SHALL ADDRESS THE COURT FROM THE FORWARD PODIUM. I WILL ALSO TELL YOU THAT AT TRIAL YOU CAN USE EITHER THE FORWARD PODIUM OR THE REAR PODIUM. BUT FOR PURPOSES OF THIS HEARING, IT WILL BE THE FORWARD PODIUM THAT WE'LL USE. OKAY?

SO, YOU MAY APPROACH THE FORWARD PODIUM, MS. GRODNER, AND ENTER YOUR APPEARANCE AT THIS TIME.

BY MS. GRODNER: GOOD MORNING, YOUR HONOR. DONNA GRODNER ON BEHALF OF MR. DARREN ROBINSON.

BY THE COURT: MS. GRODNER. AND ON BEHALF OF THE DEFENDANTS, PLEASE COME FORWARD TO ENTER YOUR APPEARANCES.

BY MS. COLLIER: MARGARET COLLIER ON BEHALF OF THE DEFENDANTS.

BY MR. SANDERS: DAVID SANDERS, YOUR HONOR, ON BEHALF OF THE DEFENDANTS.

BY THE COURT: VERY WELL. THANK YOU.

ALL RIGHT. WE HAVE SEVERAL MOTIONS PENDING HERE THAT HAVE BEEN FILED IN ANTICIPATION OF THE TRIAL ON MONDAY. COUNSEL MAY BE SEATED AT THIS TIME.

WE ARE GOING TO TRY OUR BEST TO GET THROUGH THESE AS QUICKLY AS WE CAN. I WILL ALSO NOTE THAT THERE HAVE BEEN SEVERAL FILED LATE, SOME OF WHICH I THINK WERE ENTIRELY AVOIDABLE, BUT WE'LL DEAL WITH THAT. WE WILL FIRST -- WE WILL TAKE THESE UP IN ORDER.

NOW, AMONG THE SEVERAL PENDING MOTIONS AND CHRONOLOGICALLY, AT RECORD DOCUMENT 57 WE HAVE A MOTION FOR SUMMARY JUDGMENT FILED BY THE DEFENDANTS IN THIS CASE. THE COURT WILL ISSUE A RULING ON THAT TODAY, LATER TODAY.

NEXT, WE HAVE -- AT DOCUMENT 57 WE HAVE A MOTION IN LIMINE FILED BY THE PLAINTIFF. THIS IS A MOTION TO SUPPRESS TESTIMONY AND EVIDENCE REGARDING INMATE WITNESSES.

MS. GRODNER, LET ME GIVE YOU AN OPPORTUNITY

TO VERY BRIEFLY BE HEARD ON THIS MOTION. AGAIN, THIS IS -- I'M SORRY. THIS IS THE MOTION IN LIMINE REGARDING THE ISSUE OF COMPARATIVE FAULT. NO, THIS IS 59. IS IT 57 TYMARA?

BY THE CLERK: IT'S 58, JUDGE.

BY THE COURT: 58, YES. SO, THAT IS THE MOTION IN LIMINE REGARDING COMPARATIVE FAULT. SO, MS. GRODNER, YOU MAY COME UP AND BE HEARD ON THAT.

BY MS. GRODNER: THANK YOU, YOUR HONOR. AGAIN, DONNA GRODNER ON BEHALF OF DARREN ROBINSON. YOUR HONOR, WE FILED A MOTION IN LIMINE REGARDING COMPARATIVE FAULT ON DECEMBER 3RD, 2013. IT'S DOCKET NUMBER 58. WITH REGARD TO THERE BEING A SUGGESTION THAT MR. ROBINSON SHARES ANY COMPARATIVE FAULT, AND TO THE EXTENT THAT THERE MAY BE SOME SUGGESTION THAT HE HAD A COMPARATIVE FAULT LINE ON THE JURY VERDICT FORM, WE HAVE BROUGHT TO THE ATTENTION THE CASE OF QUEZADA VERSUS COUNTY OF BERNALILLO, IF I PRONOUNCED THAT CORRECTLY. AND THAT'S A JUDGE BERRIGAN CASE OUT OF THE EASTERN DISTRICT, YOUR HONOR, AND, SPECIFICALLY FOUND THAT COMPARATIVE FAULT IS NOT A DEFENSE TO A CIVIL RIGHTS CLAIM UNDER 42 USC SECTION 1983. SO, WE WOULD ASK

THAT THERE BE NO MENTION THAT HE BEARS COMPARATIVE FAULT FOR DAMAGES OR INJURIES ARISING OUT OF THIS EVENT.

BY THE COURT: ALL RIGHT.

BY MS. GRODNER: THANK YOU, YOUR HONOR.

BY THE COURT: LET ME HEAR FROM COUNSEL FOR THE DEFENDANTS IN THE CASE. MS. COLLIER?

BY MS. COLLIER: YES, SIR. YOUR HONOR, IT'S NOT THAT WE WANT TO PRESENT EVIDENCE OF COMPARATIVE FAULT AS WHAT'S NORMALLY EXCLUDED UNDER A 1983 CLAIM. BUT WHAT WE'RE CONCERNED WITH IS THAT THE CLAIM IN THIS CASE, THE MAIN CLAIM IN THIS CASE, IS EXCESSIVE FORCE. AS YOU'RE WELL AWARE, THE INQUIRY FOR EXCESSIVE FORCE CLAIM IS WHETHER OR NOT THE FORCE WAS APPLIED IN A GOOD FAITH EFFORT TO MAINTAIN OR RESTORE DISCIPLINE.

SO, WHAT WE'RE CONCERNED ABOUT IS NOT -- THIS MOTION EXCLUDING THE DISCIPLINARY REPORTS THAT WERE ISSUED AGAINST DEFENDANT ROBINSON IN THIS CASE.

BY THE COURT: WELL, ARE WE TALKING ABOUT DISCIPLINARY REPORTS THAT WERE FILED IN CONNECTION WITH THIS INCIDENT OR OTHER INCIDENTS?

BY MS. COLLIER: JUST THIS INCIDENT. THAT'S ALL WE'RE TALKING ABOUT, DECEMBER 9, 2011.

BY THE COURT: OKAY. NOW, WHEN WERE THOSE REPORTS MADE?

BY MS. COLLIER: DECEMBER 9TH, 2011.

BY THE COURT: THEY WERE MADE ON THE SAME DAY AS THE ISSUE HERE?

BY MS. COLLIER: YES, SIR.

BY THE COURT: ALL RIGHT. WHAT I'M GOING TO DO IS WITHHOLD JUDGMENT ON THIS UNTIL I HAVE AN OPPORTUNITY TO REVIEW. DO WE HAVE THOSE? OKAY. I WILL WITHHOLD RULING ON THIS UNTIL I HAVE A CHANCE TO REVIEW THOSE.

BUT I WILL TELL YOU, MS. COLLIER, THAT I WILL CERTAINLY GIVE YOU AN OPPORTUNITY TO PRESENT EVIDENCE THAT REVEALS WHY THE OFFICERS WERE MOTIVATED TO DO WHAT THEY DID.

I WOULDN'T CONSIDER THAT, MS. GRODNER, TO BE IN SORT OF THE CLASSIC SENSE, COMPARATIVE FAULT, IF YOU WILL, MUCH AS YOU WOULD COMPARE A FAULT IN A TORT CASE, FOR INSTANCE. BUT, CERTAINLY I THINK THE DEFENDANTS HAVE THE RIGHT TO TESTIFY AS TO WHY THEY DID WHAT THEY ALLEGEDLY DID. AND IF THEY TESTIFY, FOR INSTANCE, THAT WE -- WHICH I BELIEVE THE

TESTIMONY WILL BE IN THIS CASE, THAT WE BELIEVED OR LEARNED FROM A SOURCE, THAT THE PLAINTIFF HAD CONTRABAND OF SOME SORT, THAT CERTAINLY IS ACCEPTABLE, VALID PROBATIVE TESTIMONY. AND I WON'T EXCLUDE THAT KIND OF TESTIMONY. IS THAT THE KIND OF EVIDENCE THAT YOU WANTED ME TO EXCLUDE, MS. GRODNER?

BY MS. GRODNER: NO, YOUR HONOR.

BY THE COURT: WHY DON'T YOU COME FORWARD. AND LET ME JUST REMIND EVERYONE, THAT EVERYTHING WE SAY HAS GOT TO BE ON THE RECORD. SO, PLEASE BE SURE YOU SPEAK INTO THE MICROPHONE.

BY MS. GRODNER: NO, YOUR HONOR. WE'RE NOT ATTEMPTING TO STRIKE A DEFENSE THAT THEIR ACTIONS WERE JUSTIFIED UNDER THE CIRCUMSTANCES. WHAT WE'RE TRYING TO DO IS STRIKE ANY -- ANY SUGGESTION THAT FAULT IS COMPARATIVE SO IT SETS OFF DAMAGES. SO, YOU KNOW, ---

BY THE COURT: SO, YOU'RE MORE CONCERNED ABOUT JURY CHARGE ISSUES?

BY MS. GRODNER: YES, YOUR HONOR. AND VERDICT FORM, IN THAT THEY CAN'T ARGUE, WELL, HE WAS AT FAULT, TOO. SO, YOU'VE GOT TO TAKE A 30 PERCENT DECREASE ON ANY AWARD THAT YOU MAKE, YOU

KNOW, TRADITIONALLY AWARD UNDER COMPARE FAULT ANALYSIS.

BY THE COURT: MS. COLLIER, YOUR RESPONSE TO THAT?

BY MS. COLLIER: YOUR HONOR, WE HAVE NO INTENTION OF DOING THAT.

BY THE COURT: RIGHT. OKAY. ALL RIGHT. AND I BELIEVE THAT'S IN YOUR RECOMMENDED JURY INSTRUCTIONS -- SUGGESTED JURY INSTRUCTIONS, IS IT?

BY MS. COLLIER: IT'S NOT, SIR.

BY THE COURT: ALL RIGHT. VERY WELL. SO, AGAIN, THERE WILL BE NO SUCH JURY CHARGES. SO, TO THE EXTENT THAT THE MOTION THAT RECORD DOCUMENT 58 ADDRESSES, THE SUGGESTED JURY CHARGES, THE MOTION IS GRANTED.

HOWEVER, AGAIN, THE DEFENDANTS WILL BE ENTITLED TO PRESENT ANY EVIDENCE REFLECTING THEIR DEFENSE OR MOTIVATION FOR DOING WHATEVER -- WHATEVER THEY ARE ALLEGED TO HAVE DONE. OKAY?

BY MS. COLLIER: THANK YOU, SIR.

BY THE COURT: OKAY. LET'S MOVE ON NOW TO DOCUMENT NUMBER 59. THIS IS A MOTION IN LIMINE TO SUPPRESS TESTIMONY AND EVIDENCE

REGARDING INMATE WITNESSES.

AND, AS I UNDERSTAND IT, MS. GRODNER, YOU'RE SEEKING TO SUPPRESS -- WELL, FIRST OF ALL, YOU ADDRESS ISSUES IN THE MASTER FILE. BUT, MORE SPECIFICALLY, AS I APPRECIATE IT, YOU ARE SEEKING TO PRECLUDE EVIDENCE OF THE UNDERLYING CONVICTIONS OF THOSE INMATE WITNESSES WHO MAY TESTIFY?

BY MS. GRODNER: YES, YOUR HONOR. THE NATURE OF

THE CRIME, UNDERLYING INMATES' CONVICTIONS AND ANY DETAILS ABOUT THE CRIMES AND SO FORTH, THAT WOULD GO OUTSIDE OF -- I BELIEVE IT'S 603, 604, IMPEACHMENT EVIDENCE. WE HAVE NOT BEEN GIVEN ANY MASTER FILES. WE DO NO KNOW WHAT THEY HAVE ON THESE INMATES, AS FAR AS DISCIPLINARY REPORTS, CONVICTION INFORMATION. SO, WE WOULD -- WE JUST DON'T HAVE THE INFORMATION. WE DID REQUEST THAT DURING DISCOVERY, THAT WE BE GIVEN THE MASTER FILES ON ANY INMATE THAT WE LISTED AS A WITNESS. WE WEREN'T GIVEN THOSE.

SO, WE -- WE DON'T THINK IT'S FAIR FOR THEM TO COME FORWARD WITH THIS CONVICTION INFORMATION WITHOUT IT BEING DISCLOSED IN ADVANCE OF TRIAL SO THAT WE CAN, YOU KNOW, PROPERLY PREPARE FOR THE CREDIBILITY, CHARACTER ATTACKS THAT MIGHT

COME WITH OUR WITNESSES, YOUR HONOR.
BY THE COURT: OKAY. MS. COLLIER?
BY MS. COLLIER: YOUR HONOR, ANY FELONY CONVICTIONS, ANY UNDERLYING CRIMINAL ACTS BY ANY OF OFFENDER ROBINSON'S WITNESSES ARE GOING TO BE USED SOLELY FOR IMPEACHMENT PURPOSES ONLY. THAT'S WHY THEY WEREN'T PRODUCED DURING DISCOVERY.
BY THE COURT: WELL, WAIT.
BY MS. COLLIE: THE -- I'M SORRY.
BY THE COURT: WAIT. THEY WEREN'T PRODUCED BECAUSE THEY WILL ONLY BE USED FOR PURPOSES OF IMPEACHMENT?
BY MS. COLLIER: YES, SIR. IF THEY ARE USED AT ALL. WE WOULD ONLY USE IT UNDER RULE 609 AS ALLOWED BY THE RULE FOR IMPEACHMENT PURPOSES.
BY THE COURT: WELL, AS I APPRECIATE IT, MS. GRODNER IS SAYING THAT IT SHOULDN'T BE USED AT ALL. IS THAT CORRECT, MS. GRODNER? ARE YOU SAYING THAT THEY SHOULDN'T BE ---
BY MS. GRODNER: I DON'T THINK IT'S FAIR FOR THEM TO BE USED AT ALL WHEN WE HAVEN'T BEEN PUT ON NOTICE. WHEN WE ASKED FOR IT IN DISCOVERY OF WHAT THE CONVICTION ---
BY THE COURT: WELL, LET ME TELL YOU, MS.

COLLIER, WHAT I THINK MS. GRODNER IS SAYING. THAT SHE INTENDS TO PRODUCE INMATE TESTIMONY. SHE DOESN'T KNOW WHAT THE UNDERLYING CONVICTIONS ARE. MAYBE SHE'S HAD AN OPPORTUNITY TO INTERVIEW THESE WITNESSES, MAYBE SHE HASN'T. SHE DOESN'T KNOW WHAT THE CONVICTIONS ARE BECAUSE SHE HASN'T HAD AN OPPORTUNITY TO REVIEW THE UNDERLYING RECORDS. OKAY?

AND, SO, IF DURING THE COURSE OF THAT WITNESS' CROSS EXAMINATION -- AND, AGAIN, AS HER WITNESSES, IF YOU CROSS EXAMINE THAT WITNESS AND YOU DISCOVER THAT THE WITNESS HAS A FRAUD CONVICTION, BASED UPON SOME FALSE STATEMENT TO SOMEONE, SHE AT LEAST HAS -- SHOULD KNOW ABOUT THAT BEFOREHAND, SO THAT SHE WILL HAVE AN OPPORTUNITY TO INVESTIGATE IT. IF ONE OF HER WITNESSES WILL BE IMPEACHED, SHE AT LEAST HAS THE OPPORTUNITY TO CONDUCT SOME PRELIMINARY INVESTIGATION TO SEE IF SHE CAN CONVINCE THE JURY THAT DESPITE THAT OR THAT THERE MAY, PERHAPS, HAVE BEEN CIRCUMSTANCES ASSOCIATED WITH THAT CONVICTION AND THAT MAY CAUSE THE JURY TO SAY, WELL, DESPITE THAT CONVICTION WE'RE GOING TO CONSIDER THIS WITNESS TO BE A CREDIBLE WITNESS. I DON'T THINK IT'S AN UNREASONABLE

REQUEST.

SO, I GUESS AT A -- AND, LISTEN, I DON'T -- WHAT I WOULD ASK THE STATE TO DO AT A MINIMUM IS -- AND I'M GOING TO GET TO WHICH OF THE INMATE WITNESSES WILL BE PERMITTED TO TESTIFY AND WHICH ONES WON'T. BECAUSE I CAN TELL YOU NOT EVERYBODY WILL BE PERMITTED TO TESTIFY.

BUT WITH RESPECT TO THOSE WHO WILL BE PERMITTED TO TESTIFY, WHAT I WOULD ASK -- AND, MS. GRODNER, THE SAME WITH YOU. BECAUSE I GUESS WHAT I'M SAYING IS, I DON'T -- SIMILARLY, I DON'T WANT THE STATE TO COME IN ON CROSS EXAMINATION AND SAY, ISN'T IT TRUE, MR. JONES, YOU WERE CONVICTED OF MANSLAUGHTER, IF THAT INFORMATION HASN'T ALREADY BEEN PROVIDED TO YOU. OKAY?

SO, IT SEEMS TO ME THAT IN VIEW OF THE STATE'S UNWILLINGNESS TO PROVIDE THIS INFORMATION, AND I'M NOT SAYING YOU'RE RIGHT OR WRONG, BUT WHAT I AM SAYING IS THIS. I WILL ALLOW TESTIMONY THAT A WITNESS WAS CONVICTED OF A FELONY OFFENSE AND WAS CONVICTED OF A FELONY OFFENSE, IF IT IS THE CASE, WITHIN THE LAST TEN YEARS. I THINK THAT'S WHAT THE RULE CONTEMPLATES, CORRECT?

BY MS. COLLIER: YES, SIR.
BY THE COURT: AND, FINALLY, I WOULD ASK YOU, MS. COLLIER, TO REVIEW THE PRISON RECORDS AND CONVICTION RECORDS OF THOSE PRESUMED INMATE WITNESSES WHO WILL TESTIFY. IF YOU DISCOVER THAT ONE OR MORE OF THEM HAVE BEEN CONVICTED OF CRIMES REFLECTING ON VERACITY AND TRUTHFULNESS AS CONTEMPLATED BY THE RULE, THAT YOU DISCLOSE THAT TO MS. GRODNER.
BY MS. COLLIER: YES, SIR.
BY THE COURT: IN OTHER WORDS, I JUST WANT TO KNOW IF YOU WILL -- IF YOU ARE GOING TO IMPEACH ONE OF THESE WITNESSES BECAUSE OF SUCH A CONVICTION, SHE REALLY NEEDS TO KNOW ABOUT IT SO THAT SHE CAN DO WHAT SHE CAN, PERHAPS, TO REHABILITATE OR PREPARE FOR REHABILITATION OF THE WITNESS AT TRIAL. OKAY?
BY MS. COLLIER: THANK YOU, JUDGE.
BY THE COURT: ALL RIGHT. SO, AGAIN, WITH RESPECT TO PLAINTIFF’S MOTION 68, WITH RESPECT TO THOSE INMATE WITNESSES WHO WILL TESTIFY, THE MOTION IS GRANTED IN PART, DENIED IN PART, ACCORDING TO THE INSTRUCTIONS PROVIDED BY THE COURT. ANY QUESTIONS? HEARING NOTHING, LET’S MOVE ON TO THE NEXT MOTION.

NEXT, WE HAVE RECORD DOCUMENT 60, WHICH IS A MOTION IN LIMINE TO SUPPRESS TESTIMONY AND EVIDENCE. MS. GRODNER, LET ME GIVE YOU AN OPPORTUNITY TO BE HEARD ON THIS MOTION.

BY MS. GRODNER: THANK YOU, YOUR HONOR. AGAIN, YOUR HONOR, DONNA GRODNER, FOR MR. ROBINSON. ON DECEMBER 3RD, 2013, WE FILED A MOTION IN LIMINE TO SUPPRESS TESTIMONY AND EVIDENCE REGARDING MR. ROBINSON'S CONVICTIONS AND ANY OF THE DISCIPLINARY ACTION TAKEN AGAINST HIM AT ANY TIME.

BY THE COURT: WELL, LET ME STOP YOU RIGHT THERE, MS. GRODNER, BECAUSE I THINK THERE ARE TWO DIFFERENT ISSUES. ONE IS HIS CONVICTION, CORRECT?

BY MS. GRODNER: CORRECT, YOUR HONOR.

BY THE COURT: AND SECONDLY YOU'RE SEEKING TO SUPPRESS HIS PRISON RECORD; THAT IS, ANY EVIDENCE OF ANY INFRACTIONS WHILE IN PRISON, CORRECT?

BY MS. GRODNER: CORRECT, YOUR HONOR. AND WE HAVE A SEPARATE MOTION ON THE DISCIPLINARY REPORTS FROM THIS PARTICULAR INCIDENT.

BY THE COURT: OKAY.

BY MS. GRODNER: IT'S DOCUMENT NUMBER EIGHT.

THAT'S CORRECT.
BY THE COURT: AND WE'LL GET TO THAT IN JUST A MINUTE. NOW, WITH RESPECT TO HIS UNDERLYING CONVICTION. WAS THE CONVICTION FOR -- AN ISSUE DEALING WITH TRUTHFULNESS OR VERACITY IN ANY WAY?
BY MS. GRODNER: WELL, IT WAS A BURGLARY. SO ---
BY THE COURT: BUT THAT'S NOT THE KIND OF CONVICTION THAT WOULD OTHERWISE BE USED TO IMPEACH A WITNESS WHO IS TESTIFYING, RIGHT?
BY MS. GRODNER: CORRECT, YOUR HONOR. AND WE DIDN'T WANT ANY OF THE DETAILS ABOUT THAT BEING TALKED ABOUT.
BY THE COURT: WELL, LET ME ASK MS. COLLIER. DOES THE STATE EVEN INTEND TO PRODUCE ANY EVIDENCE REGARDING HIS UNDERLYING CONVICTION?
BY MS. COLLIER: NO, YOUR HONOR.
BY THE COURT: VERY WELL. THANK YOU, MS. COLLIER. AND I THINK THE STATE IS RIGHT, MS. GRODNER. I'M SURE MS. COLLIER REALIZES THAT, YOU KNOW, TYPICALLY COURTS DON'T ALLOW THAT KIND OF EVIDENCE AT THESE TYPES OF HEARINGS. ONLY IF THE PLAINTIFF INTENDS TO TESTIFY, HE'S GOING TO BE TREATED LIKE ANY OTHER WITNESS. THAT IS, IF HE HAS A CONVICTION FOR A

FRAUD OR LYING TO THE COURT OR PERJURY OR SOMETHING LIKE THAT. OBVIOUSLY, I WILL ALLOW THAT TYPE OF EVIDENCE OF PRIOR CONVICTIONS. BUT ABSENT THAT CATEGORY OF CASES, NO SUCH CONVICTIONS WILL BE PERMITTED.

AND, SO, YOUR MOTION IS GRANTED WITH RESPECT TO HIS UNDERLYING CONVICTION.

NOW, LET'S MOVE ON NOW TO HIS PRISON RECORD. MS. COLLIER, IS IT THE STATE'S INTENTION TO PRODUCE EVIDENCE OF MR. ROBINSON'S CONVICTION -- ADMINISTRATIVE RECORD?

BY MS. COLLIER: JUST WHAT WE WERE TALKING ABOUT EARLIER, THE DISCIPLINARY REPORTS THAT WERE ISSUED ON THE SAME DAY OF THE INCIDENT IN QUESTION.

BY THE COURT: CORRECT.

BY MS. COLLIER: THAT'S -- THAT'S ALL WE INTEND TO INTRODUCE.

BY THE COURT: VERY WELL. SO, MS. GRODNER, LET ME UNDERSTAND. YOU'VE HEARD MS. COLLIER INDICATE THAT SHE'S NOT INTENDING TO PRODUCE ANYTHING OTHER THAN THE INCIDENT REPORT THAT APPLIES TO THIS SPECIFIC INCIDENT.

BY MS. GRODNER: THANK YOU, YOUR HONOR.

BY THE COURT: YOU UNDERSTAND? SO, AND I'M

GOING TO -- I THINK THAT'S FAIR GAME. ALL RIGHT?

SO, ONCE AGAIN, THE MOTION IS GRANTED IN PART, DENIED IN PART, AT LEAST WITH RESPECT TO THE DISCIPLINARY RECORDS -- THE ADMINISTRATIVE DISCIPLINARY RECORDS. ANY RECORDS OR REPORTS PERTAINING TO THE INCIDENT AT ISSUE WILL BE PERMITTED TO BE INTRODUCED, SUBJECT TO THE ABILITY TO LAY A PROPER FOUNDATION AND ANY OTHER OBJECTIONS UNDER THE RULES OF EVIDENCE. HOWEVER, THE STATE, OF COURSE, WILL NOT BE PERMITTED TO PRESENT ANY EVIDENCE OR INTRODUCE ANY EVIDENCE OF DISCIPLINARY INFRACTIONS OR ANY OTHER INCIDENT -- OF ANY OTHER INCIDENTS OTHER THAN THE ONE AT ISSUE HERE. OKAY?

BY MS. COLLIER: YES, SIR.

BY THE COURT: THANK YOU. LET'S MOVE ON NOW TO

THE MOTION FILED AT RECORD DOCUMENT 80, WHICH IS A MOTION IN LIMINE TO SUPPRESS TESTIMONY AND EVIDENCE.

NOW, MS. GRODNER, LET ME GIVE YOU AN OPPORTUNITY TO BE HEARD ON THIS MOTION. BUT BEFORE YOU DO, LET ME JUST ASK IN THE FUTURE. IN THIS PLEADING, IN PARAGRAPH TWO, YOU USE THE TERM -- THE DEFENDANT LISTED UOR IN TWO

DISCIPLINARY REPORTS.
BY MS. GRODNER: YES, YOUR HONOR.
BY THE COURT: THAT REALLY OUGHT TO BE DEFINED.
I SHOULDN'T HAVE TO SCRAMBLE TRYING TO DEFINE UOR. I DON'T KNOW WHAT THAT IS.
BY MS. GRODNER: IT'S AN UNUSUAL OCCURRENCE REPORT. I'M SORRY, YOUR HONOR.
BY THE COURT: THAT'S ALL RIGHT. THAT'S OKAY.
SO, GO ON. LET ME GIVE YOU AN OPPORTUNITY TO BE HEARD ON THAT.
BY MS. GRODNER: THANK YOU, YOUR HONOR. YOUR HONOR, IN THE WAKE OF THIS INCIDENT, THE DEFENDANTS PREPARED WHAT THEY CALL UNUSUAL OCCURRENCE REPORTS. AND IT'S GENERALLY WHAT TAKES PLACE IS THESE GUARDS WILL SIT DOWN AND WRITE A REPORT ABOUT WHAT THEY SAY HAPPENED. NOW, WE WOULD SUGGEST THAT THOSE REPORTS ARE POSSIBLY STATEMENTS, BUT DEFINITELY HEARSAY. AND WE BELIEVE THAT WE COULD OFFER THEM AGAINST THE -- BY OPPOSING PARTY AS A STATEMENT IF WE NEEDED TO AS PLAINTIFFS. BUT THEY ARE ABSOLUTELY HEARSAY WHEN OFFERED BY THE DEFENDANTS UNDER -- I THINK IT'S 801, YOUR HONOR, WITNESS STATEMENT.
ADDITIONALLY, YOUR HONOR, I CITED A CASE

OUT OF THIS COURT, I BELIEVE JUDGE BRADY WROTE IT, WHEREIN HE DISCUSSED THAT THESE TYPES OF REPORTS ARE NOT ADMISSIBLE UNDER THE BUSINESS RECORDS REPORTS BECAUSE THEY ARE INHERENTLY BIASED AND PREJUDICED BECAUSE THEY'RE BEING WRITTEN BY INDIVIDUALS WHO ARE ACCUSED OF EXCESSIVE FORCE AND THINGS OF THAT NATURE, WHICH WE HAVE HERE IN THE VIOLATIONS.

BY THE COURT: THAT'S THE JOHNSON VERSUS CANE CASE?

BY MS. GRODNER: YES, SIR.

BY THE COURT: AND THAT WAS ACTUALLY MY CASE, BUT THE MAGISTRATE JUDGE NOLAND WROTE THAT OPINION BECAUSE IT WAS DEALING WITH THE DISCOVERY ISSUE, OF COURSE. SO, I'M FAMILIAR WITH THE CASE.

BY MS. GRODNER: I DID NOT REALIZE JUDGE NOLAND WAS STILL HERE WHEN YOU TOOK THE BENCH, YOUR HONOR. I APOLOGIZE.

BY THE COURT: YES, HE WAS INDEED.

BY MS. GRODNER: OKAY, YOUR HONOR. THANK YOU VERY MUCH.

BY THE COURT: OKAY. WELL, WAIT. LET ME UNDERSTAND.

BY MS. GRODNER: OKAY.

BY THE COURT: I JUST WANT TO MAKE SURE THAT I UNDERSTAND. YOU REQUESTED RAP SHEETS -- THIS IS FOR THE DEFENDANTS. THE DEFENDANT'S RAP SHEET AND INMATE LOCATION INFORMATION, CORRECT?
BY MS. GRODNER: THE DEFENDANT'S LISTED THE RAP SHEET -- OH, THIS IS THE SECOND ONE. I'M SORRY, YOUR HONOR. I DID NOT TOUCH ON THAT. I'M SORRY. THEY LISTED THE RAP SHEETS OF OUR WITNESSES AND INMATE LOCATION SHEETS FOR DECEMBER 9TH, 2011, WHICH IS THE DATE OF THE INCIDENT. AND THE CONDUCT RECORDS OF SEVERAL INMATE WITNESSES IDENTIFIED BY THE PLAINTIFF.
AGAIN, WE HAD REQUESTED THE MASTER PRISONER FILE FOR EACH OF THESE WITNESSES, AND THAT WAS NOT PRODUCED. IT WAS SAID THAT IT WAS NOT RELEVANT.
BY THE COURT: WHY DO YOU NEED THE MASTER PRISON FILE?
BY MS. GRODNER: WELL, THE MASTER PRISON FILES WILL HAVE ALL OF THEIR CONVICTIONS AND IF THEY HAVE DISCIPLINARY STUFF, LIKE THEY WERE FOUND LYING OR ANYTHING LIKE THAT, THAT THEY MIGHT USE AGAINST. IT WOULD BE THE SAME INFORMATION WOULD BE AVAILABLE TO THEM.
BY THE COURT: RIGHT. AND THAT'S WHAT I WANTED

TO MAKE SURE. SO, WE'RE TALKING ABOUT OBTAINING THE SAME INFORMATION THAT YOU ATTEMPTED TO RECEIVE PREVIOUSLY. IN OTHER WORDS, IF THERE WAS ANY -- ANYTHING IN THE MASTER PRISON FILE THAT REFLECTED THAT THE INMATES HAD LIED IN SOME ADMINISTRATIVE PROCEEDING. IS THAT WHAT WE'RE TALKING ABOUT?

BY MS. GRODNER: AT THE ADMINISTRATIVE PROCEEDING, AT DISCIPLINARY PROCEEDING. AND ANY OTHER INFORMATION THAT THEY WOULD HAVE AVAILABLE TO THEM TO THEIR ACCESS.

BY THE COURT: TO THESE WITNESSES?

BY MS. GRODNER: YES. THEY HAVE OPEN ACCESS TO THESE FILES AND WE DON'T.

BY THE COURT: NOW, I JUST WANT TO MAKE SURE. SO, WE'RE TALKING ABOUT INFORMATION THAT CAN BE USED TO IMPEACH YOUR WITNESSES?

BY MS. GRODNER: YES, YOUR HONOR.

BY THE COURT: ALL RIGHT. LET ME HEAR FROM MS. COLLIER ON THAT POINT.

BY MS. COLLIER: YOUR HONOR, AS FAR AS THE DISCIPLINARY REPORTS THAT WE WERE TALKING -- THEY WERE TALKING ABOUT AND THE UOR'S, THE WARRANTS AND UNUSUAL OCCURRENCE REPORTS, I BELIEVE WE HAVE ALREADY COVERED THAT. THAT

THESE REPORTS GO TO THE ISSUE IN THIS CASE ON WHAT WAS THE REASON THAT EXCESSIVE FORCE WAS APPLIED.

AS FAR AS BEING ---

BY THE COURT: NOW, HOW MANY UNUSUAL REPORTS --

UNUSUAL OCCURRENCE REPORTS WERE CREATED OR PRODUCED AS A RESULT OF THIS INCIDENT, DO YOU KNOW?

BY MS. COLLIER: TWO.

BY THE COURT: TWO?

BY MS. COLLIER: YES, SIR.

BY THE COURT: HAVE THOSE BEEN SUPPLIED IN

DISCOVERY?

BY MS. COLLIER: YES, SIR.

BY THE COURT: ALL RIGHT.  SO, AT LEAST WITH

RESPECT TO THE DEFENDANT.  BECAUSE, AS I APPRECIATE IT, THIS MOTION PERTAINS TO THE DEFENDANT, AT LEAST THE REQUEST FOR THE UNUSUAL OCCURRENCE REPORTS.  THAT’S HOW I READ IT.  AM I CORRECT ABOUT THAT, MS. GRODNER?

BY MS. GRODNER: JUST A SLIGHT CLARIFICATION.

THEY PRODUCED THE UOR’S AND THE TWO DISCIPLINARY REPORT.  WE’RE ARGUING HEARSAY ON THE ADMISSIBILITY OF THOSE.

WITH REGARD TO “EXHIBITS 15" THROUGH “28"

THAT THEY LISTED IN THE PRE-TRIAL ORDER, THAT WAS THE RAP SHEETS INFORMATION, YOUR HONOR.

SO, THEY DID PRODUCE THE UOR AND THE TWO DISCIPLINARY REPORTS.

BY THE COURT: OKAY. AND, SO, WELL, MS. GRODNER, DON'T GO AWAY TOO FAR.

BY MS. GRODNER: YES, YOUR HONOR.

BY THE COURT: I GUESS I'M STILL TRYING TO UNDERSTAND HERE. YOU HAVE THE UNUSUAL OCCURRENCE REPORTS?

BY MS. GRODNER: ALL THROUGH FIVE DEFENDANTS. YES, YOUR HONOR.

BY THE COURT: ALL RIGHT. ARE YOU SEEKING TO SUPPRESS THAT?

BY MS. GRODNER: I'M STATING THAT THEY ARE INADMISSIBLE WHEN OFFERED BY THE DEFENSE, BECAUSE THEY ARE HEARSAY. THEY MAY CONSTITUTE STATEMENTS WHEN OFFERED BY OPPOSING PARTY UNDER 801 FOR MY PURPOSES OF IMPEACHING THEM OR TALKING TO THEM. BUT THEY WOULD NOT BE ADMISSIBLE ON DIRECT BY THE DEFENSE AS THEY ARE HEARSAY AND THEY ARE NOT SUBJECT TO THE BUSINESS RECORDS EXCEPTION DUE TO THE CASE THAT WE DISCUSSED EARLIER.

BY THE COURT: THEY'RE NOT ADMISSIBLE IF THE

PLAINTIFF TESTIFIES. IS THAT WHAT YOU'RE ASSERTING?

BY MS. GRODNER: NO, YOUR HONOR. I -- THESE WOULD BE THEIR STATEMENTS.

BY THE COURT: CORRECT. THAT'S WHAT I'M TRYING TO MAKE SURE I UNDERSTAND.

BY MS. GRODNER: THEY'RE NOT -- THEY'RE NOT ADMISSIBLE WHEN THEY ARE FROM -- IN THEIR CASE --

BY THE COURT: ALL RIGHT.

BY MS. GRODNER: -- ON DIRECT.

BY THE COURT: VERY GOOD.

BY MS. GRODNER: THANK YOU, YOUR HONOR.

BY THE COURT: SO, IN OTHER WORDS, YOU'RE NOT CONCERNED THAT THEY COULD USE THOSE REPORTS TO IMPEACH YOUR CLIENT IF HE TESTIFIES?

BY MS. GRODNER: WELL, THEY'RE NOT HIS STATEMENTS.

BY THE COURT: CORRECT. EXACTLY.

BY MS. GRODNER: YES, YOUR HONOR.

BY THE COURT: ALL RIGHT. MS. COLLIER?

BY MS. COLLIER: YOUR HONOR, OUR POSITION IS THAT THESE REPORTS ARE ADMISSIBLE UNDER THE BUSINESS RECORDS' EXCEPTION. THEY FALL WITHIN THAT EXCEPTION. THEY ARE PRODUCED, YOU KNOW,

WITHIN A FEW HOURS OR WITHIN A CERTAIN -- A VERY CLOSE TIME FRAME TO WHEN THE EVENT ACTUALLY OCCURRED. THEY'RE NOT -- IT'S NOT WRITTEN BY SOMEBODY ELSE. IT'S WRITTEN BY PEOPLE WHO HAD FIRST-HAND ACCOUNTS. IT'S PART OF THE RECORDS THAT ARE MAINTAINED AS JUST ROUTINE COURSE AND WITHIN THE SCOPE OF BUSINESS AT DCI, DIXON CORRECTIONAL INSTITUTION.

BY THE COURT: SO, WHAT'S THE DOWN SIDE OF ALLOWING, OF COURSE, THE DEFENDANTS TO TESTIFY SHOULD THEY WISH TO TESTIFY, BUT SIMPLY EDUCING TESTIMONY THAT THEY CREATED REPORTS DESCRIBING THE INCIDENT AND LEAVING IT AT THAT? I MEAN, WHAT DO THE REPORTS DO?

BY MS. COLLIER: THE REPORTS GIVE THE JURY SOMETHING ELSE TO LOOK AT. YOU KNOW, IT GIVES THEM AN EXHIBIT. IT GIVES THEM MORE EVIDENCE OF WHAT OCCURRED. AND THEY CAN LOOK AT THE REPORTS AND SEE THAT THE REPORTS ARE WRITTEN ON THE SAME DATE. THAT THEY'RE NOT SOMETHING THAT'S MANUFACTURED LATER. THAT THEY ACTUALLY HAVE THE TIME THAT THEY'RE WRITTEN ON THERE, THE TIME OF THE INCIDENT, WHO WAS INVOLVED. AND, SO, THEY CAN USE THAT TO WEIGH THE EVIDENCE.

BY THE COURT: I UNDERSTAND. I WILL WITHHOLD

JUDGEMENT ON THAT. MY CONCERN VERY OFTEN IS THAT, YOU KNOW, ONCE WE ALREADY HAVE TESTIMONY OF THE INCIDENT AND ASSUMING THAT THE TESTIMONY IS CONSISTENT WITH WHATEVER REPORTS WERE PRODUCED. IF THEY WEREN'T CONSISTENT, I'M SURE MS. GRODNER, ON CROSS EXAMINATION WILL RAISE THAT. BUT IF THE REPORTS ARE COMPLETELY CONSISTENT WITH THE TESTIMONY, THE EVIDENCE COULD BE CUMULATIVE. THAT'S USUALLY THE OBJECTION THAT IT'S DRAWING. YOU KNOW, WAIT, JUDGE, IT'S CUMULATIVE. WE'VE ALREADY HAD THIS. THIS ADDS NOTHING. THERE'S NOTHING TO BOLSTER OR -- OR ALLOW FOR VOUCHING OF THIS WITNESS' TESTIMONY. THAT MAY OR MAY NOT BE TRUE. BUT I'M JUST TELLING YOU WHAT TYPICALLY IS THE KIND OF OBJECTIONS THAT ARE DRAWN.

BUT, AGAIN, I'LL ADDRESS THAT ON THE MORNING OF TRIAL. I'LL TAKE A LOOK AT IT.

SO, I JUST WANT TO MAKE SURE. DO I HAVE ALL -- DO WE HAVE THE UNUSUAL OCCURRENCE REPORTS, TAMARA?

BY THE CLERK: I'M NOT SURE ABOUT THIS.

BY THE COURT: OKAY. SO, JUST TO MAKE SURE,

MS. COLLIER, BEFORE YOU LEAVE THE COURTROOM TODAY, THAT WE HAVE THE UNUSUAL OCCURRENCE

REPORTS, OKAY?
BY MS. COLLIER: YES, SIR.
BY THE COURT: ALL RIGHT. LET'S MOVE ON TO THE OTHER DOCUMENTS THAT ARE DESCRIBED IN YOUR MOTION, MS. GRODNER. IN ADDITION TO THE UOR'S, YOU ALSO SAID THERE ARE TWO DISCIPLINARY REPORTS. THOSE ARE SEPARATE DOCUMENTS?
BY MS. GRODNER: YES, YOUR HONOR.
BY THE COURT: ARE THOSE THE SAME DOCUMENTS WE'VE ALREADY DESCRIBED OR TAKEN UP EARLIER?
BY MS. GRODNER: RIGHT. THEY CHARGED MY CLIENT WITH DISCIPLINARY INFRACTIONS.
BY THE COURT: AND I THINK I'VE ALREADY RULED ON THAT, --
BY MS. GRODNER: YES, YOUR HONOR.
BY THE COURT: -- THAT THOSE WILL BE PERMITTED TO BE INTRODUCED BY THE DEFENDANTS AS PART OF THEIR DEFENSE. AND, SO, THOSE WILL BE ADMITTED.
BY MS. GRODNER: YOUR HONOR, MAY WE RESERVE OUR RIGHT TO OBJECT DURING TRIAL TO THE ADMISSIBILITY?
BY THE COURT: ABSOLUTELY.
BY MS. GRODNER: THANK YOU, YOUR HONOR.

BY THE COURT: ANYTHING ELSE THAT FORMS THE BASIS OF THIS MOTION, MS. GRODNER?

BY MS. GRODNER: YES, YOUR HONOR. THEY HAD LISTED DR. CLEVELAND AS A WITNESS. HE WAS NOT A TREATING PHYSICIAN. HE DID GIVE A STATEMENT. AND -- AND IN THEIR SUMMARY JUDGMENT WHERE -- AND NEITHER DR. CLEVELAND NOR DR. TARVER WERE LISTED BY THE DEFENDANTS AS WITNESSES. AND THEY ARE SET TO TESTIFY THAT THERE IS VERY LITTLE EVIDENCE IN THE PLAINTIFF’S MEDICAL RECORDS TO SUPPORT A FINDING OF EXCESSIVE FORCE ON DECEMBER 9TH, 2011, WHICH I THINK IS KIND OF OUTSIDE THE OPINION RANGE OF A MEDICAL PERSON TO GIVE AN OPINION ON WHAT’S EXCESSIVE FORCE AND UNDER THE LAW WHICH -- WHICH IS A JURY QUESTION.

AND WE WOULD JUST ASK THAT TO THE EXTENT THAT THEY’RE GOING TO GIVE MEDICAL OPINIONS BASED ON RECORD REVIEW IS ONE THING. BUT TO GIVE AN OPINION THAT THERE’S NO EXCESSIVE FORCE, WE FEEL THAT SHOULD BE STRICKEN OR THEY SHOULD NOT BE -- THEY SHOULD BE CAUTIONED NOT TO GIVE THOSE TYPES OF OPINIONS. THEY COULD BE PREJUDICIAL. THANK YOU, YOUR HONOR.

BY THE COURT: THANK YOU. MS. COLLIER? NOW,

MR. COLLIER, I DIDN'T SEE A REPLY TO THIS MOTION. AM I CORRECT?

BY MS. COLLIER: YES, SIR.

BY THE COURT: ALL RIGHT. SO, I WAS NOT ABLE TO DISCERN WHAT POSITION. I THINK MS. GRODNER HAS A VALID CONCERN. HOW CAN A PHYSICIAN JUST REVIEW RECORDS IN THE CASE, SIMPLY ON THE COLD RECORDS, WHAT WAS EXCESSIVE OR WAS NOT? I DOUBT THAT A PHYSICIAN CAN LOOK AT THE RECORDS AND INDICATE THAT, ACCORDING TO THE MEDICAL PROVIDERS WHO EXAMINED THE PERSON, THE PATIENT, LET'S SAY, AFTER THE INCIDENT, THAT THESE ARE THE FINDINGS OF THAT PERSON. SO, HOW COULD THEN A MEDICAL PROFESSIONAL THEN MAKE A JUDGMENT, SORT OF A QUALITATIVE JUDGMENT, ABOUT WHAT IS EXCESSIVE AND WHAT IS NOT EXCESSIVE?

BY MS. COLLIER: WE'RE NOT OFFERING DR. TARVER OR DR. CLEVELAND TO TESTIFY AS TO A LEGAL CONCLUSION AS TO WHAT WAS EXCESSIVE OR WHAT WASN'T.

BY THE COURT: OKAY.

BY MS. COLLIER: DR. TARVER HAS BEEN LISTED, AND DR. CLEVELAND AS WELL, SIMPLY TO TESTIFY AS TO WHAT THE MEDICAL RECORDS SAY, WHAT THEIR REVIEW SHOWS OF THE MEDICAL RECORDS. THAT'S WHY

WE'RE OFFERING THEM AS WITNESSES IN THIS CASE.

BY THE COURT: OKAY. SO, JUST -- IT'S ONLY TO TESTIFY ABOUT WHAT -- DID DR. CLEVELAND OR DR. TARVER TREAT THE PLAINTIFF?

BY MS. COLLIER: DR. TARVER WAS THE OVERALL TREATING PHYSICIAN OF DEFENDANT ROBINSON WHILE HE WAS AT DCI. BUT HE -- DR. TARVER WAS NOT ACTUALLY THE TREATING PHYSICIAN ON THE DAY IN QUESTION.

BY THE COURT: OKAY. DID HE SERVE IN A SUPERVISORY CAPACITY OR WAS HE A CUSTODIAN OR IS HE THE CUSTODIAN OF THE MEDICAL RECORDS?

BY MS. COLLIER: HE ISN'T CURRENTLY. HE NO LONGER WORKS AT DCI. BUT HE WAS THE MEDICAL DIRECTOR AT DCI.

BY THE COURT: BUT HE WAS THE MEDICAL DIRECTOR ON THE DATE OF THIS INCIDENT?

BY MS. COLLIER: I BELIEVE SO. I CAN FIND OUT FOR YOU.

BY THE COURT: SURE. OKAY. WELL, THAT MAY HAVE SOME BEARING ON THE ADMISSIBILITY OF HIS TESTIMONY. IT WOULD ALSO HAVE A BEARING IF HE WAS THE CUSTODIAN OF THE RECORD. HE WAS ALSO THE CUSTODIAN OF THE MEDICAL RECORDS AT THAT TIME.

SO, NOW, MS. GRODNER ASSERTS THAT SHE WAS NOT INFORMED TIMELY THAT DR. CLEVELAND AND DR. TARVER WOULD BE CALLED AS WITNESSES. WHAT'S YOUR RESPONSE TO THAT?

BY MS. COLLIER: MS. GRODNER INDICATED THAT NEITHER ONE OF THESE WITNESSES WERE IDENTIFIED IN RESPONSE TO HER DISCOVERY REQUEST. YOUR HONOR, MS. GRODNER DIDN'T ASK FOR A MAY CALL/WILL CALL WITNESS LIST IN HER DISCOVERY REQUEST.

BY THE COURT: OKAY. SO, WHEN DID YOU FIRST DISCLOSE THAT YOU WOULD CALL ONE OR BOTH OF THESE PHYSICIANS?

BY MS. COLLIER: WELL, DR. CLEVELAND'S AFFIDAVIT WAS SUBMITTED ALONG WITH THE MOTION FOR SUMMARY JUDGMENT. DR. TARVER AND BOTH DR. CLEVELAND WERE BOTH INCLUDED ON THE PRE-TRIAL -- PROPOSED PRE-TRIAL ORDER.

BY THE COURT: ALL RIGHT. NOW, MS. GRODNER, IS THERE A REASON WHY YOUR DISCOVERY REQUEST DIDN'T INCLUDE MAY-CALL WITNESSES, SUCH AS THESE PHYSICIANS?

BY MS. GRODNER: BECAUSE IT'S ALREADY IN THE 26A. AND THEY DIDN'T LIST THEM AS A PERSON WITH KNOWLEDGE OR WHO MAY HAVE KNOWLEDGE IN THE 26A

DISCLOSURE.

ADDITIONALLY, WE LISTED TWO NURSES WHO WERE THERE AT THE TIME AND ARE THERE NOW, TO TALK ABOUT THE MEDICAL RECORDS AND IN OUR 26A DISCLOSURE. SO, THEY WEREN'T LISTED IN THEIR 26A.

BY THE COURT: OKAY. MS. COLLIER?

BY MS. COLLIER: SHE'S RIGHT THAT THEY WEREN'T LISTED IN OUR 26A. IT'S AN OVERSIGHT ON HOUR PART.

BY THE COURT: YES, OKAY. WELL, THAT'S FINE.

BUT LET ME TELL YOU, THAT EVEN THOUGH THEY WEREN'T -- I MEAN, AS YOU KNOW, IN LITIGATION LIKE THIS, THOSE DISCLOSURES ARE MADE EARLY ON IN A CASE AND YOU DON'T YET KNOW UNTIL AT SOME POINT DURING DISCOVERY PERHAPS WHO YOUR WITNESSES ARE. AT WHAT POINT DURING THE COURSE OF THE -- YOUR INVESTIGATION OF THE CASE OR YOUR PREPARATION TO DEFEND THE CASE DID YOU LEARN THAT THESE WITNESSES MAY BE -- THESE PHYSICIANS MAY BE WITNESSES?

BY MS. COLLIER: I ACTUALLY DIDN'T ENROLL IN THIS CASE UNTIL MAY. SO, THAT -- THAT'S WHEN I ---

BY THE COURT: RIGHT. I KNOW. MR. DENICOLA,

I BELIEVE, --

BY MS. COLLIER: YES, SIR.

BY THE COURT: -- WAS REPRESENTING THE STATE UNTIL RECENTLY.

BY MS. COLLIER: THAT -- THAT -- SO, I LEARNED IN MAY.

BY THE COURT: OKAY. WHEN YOU TOOK THE CASE?

BY MS. COLLIER: YES, SIR.

BY THE COURT: ALL RIGHT. WELL, I TELL YOU WHAT. I'M GOING TO WITHHOLD JUDGMENT ON THAT. I TELL YOU, I'M INCLINED TO ALLOW THE PHYSICIANS, MS. GRODNER, TO TESTIFY IF THE TESTIMONY IS LIMITED SOLELY TO AN EXPLANATION OF THE MEDICAL RECORDS THAT WERE CREATED ON THE DATE OF THE INCIDENT. OKAY? AS I DO BELIEVE THAT THE JURY WOULD BENEFIT FROM HAVING SOMEONE TESTIFY ABOUT WHAT THOSE RECORDS INDICATE.

BUT LET ME ASK ONCE AGAIN. I THINK I'VE ALREADY ASKED THIS, AND YOU TELL ME. BUT NEITHER OF THESE PHYSICIANS WERE, IN FACT, THE TREATING PHYSICIAN?

BY MS. COLLIER: THAT'S CORRECT, YOUR HONOR.

BY THE COURT: CORRECT?

BY MS. COLLIER: YES, SIR.

BY THE COURT: BUT THEY WOULD HAVE SOME

KNOWLEDGE OF THE TREATMENT PROVIDED BY THE DEFENDANT BASED UPON THOSE RECORDS, CORRECT?

BY MS. COLLIER: YES, SIR.

BY THE COURT: ALL RIGHT. VERY WELL.

MS. GRODNER, I THINK THAT'S GOING TO QUALIFY THE RULES. IT SEEMS TO ME THAT THE SCOPE OF THAT TESTIMONY WILL BE QUITE LIMITED. AND I'M ASSURED, AND I'M SURE YOU WERE SATISFIED WITH MS. COLLINS' REPRESENTATIONS, THAT THERE WILL BE NO TESTIMONY REGARDING WHETHER EXCESSIVE FORCE WAS USED OR NOT USED.

SO, I'M GOING TO GO ON AND DENY THE MOTION. I WILL ALLOW THE STATE TO PUT ON SOME EVIDENCE, SOME MEDICAL EVIDENCE, OF THE DEFENDANT'S TREATMENT ON THE -- WITH RESPECT TO THE INCIDENT IN QUESTION. YOUR OBJECTION TO MY RULING IS NOTED.

NEXT WE HAVE THE MOTION IN LIMINE TO EXCLUDE TESTIMONY OF INMATE WITNESSES FILED BY DEFENDANTS. AND THAT'S AT DOCUMENT NUMBER 85.

MS. COLLIER, LET ME GIVE YOU AN OPPORTUNITY TO BE HEARD.

BY MS. COLLIER: THANK YOU, SIR. THE PLAINTIFF

HAS LISTED SEVERAL WITNESSES IN HER PRE-TRIAL ORDER. AND SHE'S LISTED THEM AS BEING AS

GOING TO TESTIFY TO A PATTERN AND PRACTICE OF BRUTALITY. NOW, HAVING A PRACTICE OF BRUTALITY IS SIMPLY NOT RELEVANT FOR THE ISSUES THAT'S IN THIS CASE. THE ISSUE THAT IT'S IN THIS CASE IS, OF COURSE, EXCESSIVE FORCE, WAS IT USED AGAINST THE OFFENDER DARREN ROBINSON, ON DECEMBER 9TH, 2011.

SO, ANY TESTIMONY THAT THESE INMATE WITNESSESS MAY HAVE THAT RELATES TO ANY OTHER INSTANCE JUST ISN'T RELEVANT FOR THE CASE THAT IS AT HAND. NOT ONLY IS IT NOT RELEVANT, BUT IT'S ALSO HIGHLY PREJUDICIAL AND HAS VERY LOW PROBATIVE VALUE.

BUT IT'S ALSO PROBATIVE CHARACTER EVIDENCE UNDER RULE 404, THE FEDERAL RULES OF EVIDENCE. NOW, RULE 404 PROVIDES THE EVIDENCE OF A PERSON'S CHARACTER IS NOT ADMISSIBLE TO PROVE THAT ON A PARTICULAR OCCASION THAT PERSON ACTED IN ACCORDANCE WITH THAT CHARACTER. AND THAT IS EXACTLY WHAT OFFENDER ROBINSON IS SEEKING TO DO WITH THESE INMATE WITNESSES.

NOW, FOR LIMITED CHARACTER EVIDENCE UNDER 404, THE REASON IT'S PROHIBITED IS THAT IT HAS VERY SLIGHT PROBATIVE VALUE. IT'S VERY PREJUDICIAL AND IT DISTRACTS THE JURY FROM THE

TRUE ISSUE IN THE CASE. YOUR HONOR, THE TRUE ISSUE IN THIS CASE IS WHETHER OR NOT EXCESSIVE FORCE WAS USED AGAINST OFFENDER DARREN ROBINSON ON DECEMBER 9TH, 2011.

SO, ALLOWING THESE OTHER INMATE WITNESSES TO TESTIFY TO SOMETHING THAT ALLEGEDLY HAPPENED WITH THEM BY THESE OTHER -- BY THESE OFFICERS, IS JUST NOT RELEVANT IN THIS CASE.

BY THE COURT: OKAY. LET ME HEAR FROM MS. GRODNER ON THAT POINT.

BY MS. GRODNER: YOUR HONOR, WE DID FILE A BRIEF ON THIS, AND WE'VE CITED NUMEROUS CASES SHOWING THAT IT IS RELEVANT WHETHER OR NOT THIS IS AN ISOLATED INCIDENT OF BRUTALITY. IT'S RELEVANT TO SHOW THE STATE OF MIND AND IT'S RELEVANT TO PUNITIVE DAMAGES, WHETHER THIS WAS WANTON AND RECKLESS, CALLOUS INDIFFERENCE, MALICIOUS. AND, IN FACT, WE'VE CITED CASES WHERE THE FIFTH CIRCUIT FOUND FAULT WITH PEOPLE WHO DID INFLICT -- IN CASES WHERE THEY DIDN'T SHOW A PATTERN OR THAT THAT IT WAS JUST AN ISOLATED INCIDENT. IN FACT, IF IT'S AN ISOLATED INCIDENT, IT COULD BE FOUND TO BE, YOU KNOW, NOT NECESSARILY RISE TO THE LEVEL OF A CALLOUS INDIFFERENCE FOR FEDERALLY PROTECTED RIGHTS.

SO, WE THINK THAT WE ARE FULLY WITHIN OUR RIGHTS TO SHOW, IN FACT, THAT THESE OFFICERS HAVE DONE THIS VERY SAME THING IN THE MAJOR'S OFFICE TO OTHER INMATES RATHER THAN TAKING THEM DIRECTLY OVER TO ADMINISTRATIVE SEGREGATION AS THEY'RE REQUIRED UNDER THE RULES.

BY THE COURT: OKAY. WELL, LET ME TELL YOU HOW

I'M GOING TO RULE ON THIS CASE. I'M GOING TO LIMIT THE TESTIMONY OF THE INMATE WITNESSES. YOU KNOW, THIS IS NOT NECESSARILY -- CERTAINLY NOT A CLASS ACTION LAWSUIT. AND THIS IS NOT A PATTERN AND PRACTICE LAWSUIT. ALTHOUGH YOU WILL HAVE AN OPPORTUNITY TO PRESENT EVIDENCE, IF YOU CAN, REGARDING A PATTERN AND PRACTICE OF ABUSE OF THIS INMATE.

NOW, WE READ THE BMW CASE THAT YOU CITED IN YOUR RESPONSE. AND I KNOW THAT ONE OF THE FACTORS THAT THE COURT RELIED ON AND U.S. SUPREME COURT CASE WAS CONDUCT INVOLVING REPEATED ACTION OR WAS THE -- OR WAS IT AN ISOLATED INCIDENT. AND, AGAIN, WE'RE TALKING ABOUT CERTAIN ACTIVITIES WITH RESPECT TO BMW. I THINK SOME SORT OF PAINTING PROCESS OR WHAT-HAVE-YOU.

OUR READING OF THAT CASE REVEALED THAT

THERE WERE SEVERAL LAWSUITS FILED THAT THE COURT ALLOWED THE COURT OR THE JURY TO CONSIDER. THAT IS, THAT THERE WERE OTHER FINDINGS AT SOME POINT BY JUDGES OR JUDICIAL OFFICERS THAT TAKEN TOGETHER WAS RELIABLE ENOUGH TO BE CONSIDERED BY A COURT.

HERE, GIVEN THE NATURE OF THIS ENVIRONMENT AND THE RELATIONSHIP BETWEEN THE CORRECTIONS OFFICERS AND THE PRISONERS, THERE'S BOUND TO BE SOME ANIMOSITY, SOME TENSION THERE. IT CERTAINLY DOESN'T DEFY LOGIC TO ASSUME THAT THERE COULD BE INMATES WHO, IN AN EFFORT TO TRY TO GET BACK AT A GUARD, FOR WHATEVER REASON, WOULD BE WILLING TO TESTIFY AGAINST HIM IN A PROCEEDING SUCH AS THIS.

NOW, IF ANY OF THOSE INMATES HAVE FILED LAWSUITS, HAVE WON LAWSUITS INDICATING THAT THEY WERE ABUSED, I MAY CONSIDER ALLOWING THEM TO TESTIFY ABOUT THAT. BUT --

BY MS. GRODNER: THANK YOU, YOUR HONOR.

BY THE COURT: -- WHAT I CAN'T ALLOW ARE INMATES

TO JUST COME IN HERE AND SAY, YOU KNOW, TWO WEEKS BEFORE THIS INCIDENT HAPPENED I WAS STRUCK OR TWO MONTHS BEFORE THIS INCIDENT HAPPENED I SAW JOE, MY CELL MATE, STRUCK. THAT'S FAR TOO

SPECULATIVE. IT'S NOT RELIABLE ENOUGH.

SO, LET ME ASK YOU THEN, MS. GRODNER. DO YOU HAVE ANY SUCH RELIABLE INFORMATION?

BY MS. GRODNER: YES, YOUR HONOR. I DO HAVE IT.

AND OTHER INMATES WHO HAVE FILED LAWSUITS AGAINST THESE SAME OFFICERS FOR THIS SAME -- ALMOST EXACT SAME CONDUCT.

BY THE COURT: OKAY. AND WHAT WERE THE RESULTS OF THOSE LAWSUITS?

BY MS. GRODNER: PENDING.

BY THE COURT: WELL, I'M NOT SURE THAT'S ENOUGH, THOUGH, MS. GRODNER. PENDING IS NOT GOOD ENOUGH. ANYONE CAN FILE A LAWSUIT. BUT NO -- THERE'S NOT BEEN A FINDING BY A JUDGE OR A JURY THAT THESE ALLEGATIONS AGAINST THESE OFFICERS WERE SUBSTANTIATED. AND I'M CONCERNED THAT BY ALLOWING THAT EVIDENCE, I WOULD -- WE WILL PERMIT UNDUE PREJUDICE TO RESULT TO THOSE OFFICERS, TO THE DEFENDANTS IN THIS CASE. AND IT WOULD CONFUSE THE JURIES, AS MS. COLLIER, I THINK CORRECTLY POINTS OUT. THAT IS, THAT WHAT WE'RE INTERESTED IN HERE, WHAT THE JURY HAS TO FOCUS ON THIS -- IN THIS CASE IS THIS INCIDENT, ON THIS DATE INVOLVING THIS PLAINTIFF. AND NOTHING ELSE.

BY MS. GRODNER: BUT THERE'S ---

BY THE COURT: HOWEVER -- HOWEVER, IN -- WHETHER IT'S UNDER 404B OR OTHERWISE, IF THERE IS SOME EVIDENCE, IF THERE IS SOME JUDGMENT THAT HAS BEEN RENDERED AGAINST ONE OF THESE DEFENDANTS BY AN INMATE, SIMILAR CONDUCT IN A SIMILAR SITUATION, I MAY BE INCLINED TO ALLOW THAT.

SO, ONCE AGAIN, DO WE HAVE ANY SUCH INFORMATION?

BY MS. GRODNER: I DON'T HAVE SOMEONE WHO'S HAD A JUDGMENT RENDERED, YOUR HONOR. BUT I DO THINK IT WOULD BE FAIR FOR A JURY TO KNOW THAT THIS IS NOT THE ONLY TIME THAT THEY HAVE DONE THIS, WHERE THEY'VE GONE AND TAKEN INMATES INTO THE MAJOR'S OFFICE RATHER THAN TAKE THEM OVER TO ADMINISTRATIVE SEGREGATION. AND THAT AS A RESULT, AFTER THESE INMATES LEAVE, THEY'VE GOT TO GO TO THE INFIRMARY.

YOUR HONOR, I DON'T THINK IT'S FAIR FOR THEM TO SIT ON THE WITNESS STAND AND PRESENT THEMSELVES AS, I'VE NEVER DONE ANYTHING LIKE THIS BEFORE, WHEN I HAVE AMPLE EVIDENCE THAT THEY HAVE.

BY THE COURT: BUT, AGAIN, ---

BY MS. GRODNER: FROM MEDICAL RECORDS, FROM -- FROM THE ---

BY THE COURT: WELL, WHAT YOU'RE ASKING ME TO DO, MS. GRODNER, IS -- ESSENTIALLY, THEN, WHAT YOU'RE ASKING ME TO DO IS CONDUCT MINI-TRIALS ON EACH OF THESE WITNESSES WHO WILL TESTIFY. I CAN'T DO THAT. BECAUSE FOR -- AND FOR A VARIETY OF REASONS. IT SEEMS TO ME THAT ESPECIALLY AT THIS STAGE OF THINGS, THESE DEFENDANTS WOULD HAVE AN OPPORTUNITY TO THEN TRY TO DEFEND THEMSELVES AGAINST THE TESTIMONY OF ALL THE WITNESSES WHO WILL COME BEFORE THE JURY. DO YOU UNDERSTAND MY POINT? WE'LL BE HERE FOR THREE WEEKS IF THAT WAS THE CASE.

BY MS. GRODNER: YOUR HONOR, THE TESTIMONY COULD BE KEPT VERY SHORT AND BE LIMITED TO JUST THE SPECIFIC ACTS UNDERLYING THIS, THAT THERE WAS AN ISSUE INVOLVING AN INMATE WITH THESE SAME GUARDS. THAT RATHER THAN TAKE THEM TO ADMINISTRATIVE SEGREGATION, THEY WERE INSTEAD TAKEN TO THE MAJOR'S OFFICE. AND THEN AFTER THEY LEFT, THEY HAD TO GO TO THE INFIRMARY.

BY THE COURT: WELL, LET ME ASK SOU THIS. HOW MANY LAWSUITS HAVE BEEN FILED ALLEGING THE SAME CONDUCT?

BY MS. GRODNER: THREE OR FOUR.

BY THE COURT: WHEN?

BY MS. GRODNER: WITHIN THE PAST TWO YEARS.

BY THE COURT: AND THE STATUS OF THOSE PROCEEDINGS?

BY MS. GRODNER: PENDING.

BY THE COURT: SEE, I JUST -- I CAN'T. I MEAN, I CAN'T -- I SIMPLY CANNOT HAVE THREE OR FOUR MINI-TRIALS AT THIS POINT, ESPECIALLY AT THIS TIME. YOU KNOW, THE DEFENDANTS WOULD HAVE A RIGHT DURING DISCOVERY TO DEPOSE THESE FOLKS.

BY MS. GRODNER: THEY WERE DISCLOSED.

BY THE COURT: TO SEEK ANY TYPE OF RECORDS RELATED TO ANY OF THOSE. AND, SO, AGAIN, I THINK MS. COLLIER IS RIGHT. I HAVE TO BE CONCERNED, THE JURY HAS TO BE CONCERNED WITH THE ALLEGATIONS THAT OCCURRED ON THIS DATE WITH RESPECT TO THIS DEFENDANT -- EXCUSE ME, PLAINTIFF. THE PLAINTIFF. IF ANY OF THESE WITNESSES THAT YOU WISH TO TESTIFY WERE, IN FACT, FACT WITNESSES WHO ACTUALLY WITNESSED THE INCIDENT AT HAND, I WOULD SAY I'M GOING TO LET THEM TESTIFY.

BY MS. GRODNER: WELL, IT TOOK PLACE IN A MAJOR'S OFFICE BEHIND A CLOSED DOOR, YOUR

HONOR. THAT'S A LITTLE, YOU KNOW, THAT'S A LITTLE UNFAIR TO MY CLIENT WHERE THERE'S NO VIDEO CAMERA THERE.

BY THE COURT: NOT ALL OF THE TESTIMONY. I MEAN, THE TESTIMONY, AS I APPRECIATE IT FROM THE PLEADINGS AND FROM THE MOTION FOR SUMMARY JUDGMENT, CERTAIN ACTIVITIES OCCURRED IN THE REC ROOM. THERE COULD HAVE BEEN WITNESSES TO THAT, RIGHT? I MEAN, I UNDERSTAND YOU MAY NOT BE ABLE TO PRESENT INMATE TESTIMONY ABOUT WHAT HAPPENED BEHIND THE MAJOR'S CLOSED DOOR, BUT THERE CERTAINLY WERE INCIDENTS THAT HAPPENED BEFORE HE ENTERED THAT CLOSED DOOR OFFICE AND, PERHAPS, PERSONS WHO MAY OR MAY NOT HAVE SEEN HIM WHEN HE EXITED THAT OFFICE AND WAS RETURNED TO HIS CELL.

BY MS. GRODNER: MAY I HAVE MY WITNESSES AVAILABLE FOR REBUTTAL IN THE -- IN THE INCIDENT THAT THEY TEST -- WELL, NOTHING LIKE THIS HAS EVER HAPPENED BEFORE. NO ONE HAS EVER ACCUSED US OF THIS, THAT TYPE OF TESTIMONY, YOU KNOW. THIS IS -- COMES OUT OF THE BLUE. WE'VE NEVER, YOU KNOW, BEEN ACCUSED OF ANYTHING LIKE THAT. THAT TYPE OF TESTIMONY, I THINK IT WOULD SURELY OPEN THE DOOR ON --

BY THE COURT: BUT THAT'S ---

BY MS. GRODNER: -- REBUTTAL, YOUR HONOR, TO HAVE THOSE WITNESSES --

BY THE COURT: -- WELL, ---

BY MS. GRODNER: -- AT LEAST AVAILABLE.

BY THE COURT: WAIT. MS. GRODNER, LET ME REMIND YOU AGAIN. THE NUMBER ONE RULE IN THIS COURT IS THAT WHEN I SPEAK, NO ONE ELSE SPEAKS. OKAY?

BY MS. GRODNER: SORRY, YOUR HONOR.

BY THE COURT: SO, LET'S TAKE THIS TO A LOGICAL CONCLUSION. NO ISSUES, NO QUESTIONS ARE RAISED ON DIRECT EXAMINATION OF THESE WITNESSES ABOUT, HAVE YOU EVER BEEN ACCUSED OF THIS. BECAUSE, FRANKLY, IT'S NOT EVEN RELEVANT, I THINK. I CAN TELL YOU RIGHT NOW. AND THEN YOU COME IN CROSS EXAMINATION AND YOU ASK, HAVE YOU EVER BEEN ACCUSED OF THIS. EVEN IF I FIND IT'S NOT AN OBJECTIONABLE QUESTION, AND FRANKLY I THINK IT IS. EVEN IF I ALLOW THE DEFENDANT TO ANSWER THAT, AGAIN, I JUST -- IT'S -- I -- WE JUST CAN'T GO DOWN THAT ROAD.

UNLESS AND IF THERE IS A FINDING, EITHER -- AND IT DOESN'T EVEN HAVE TO BE A LAWSUIT. IF THERE HAS BEEN AN ADMINISTRATIVE COMPLAINT FILED

THAT WAS SUSTAINED AT SOME POINT, I WILL ALLOW TESTIMONY OF THAT.

BUT I CAN'T, AGAIN, HAVE THREE OR FOUR OR FIVE TRIALS THAT SIMPLY DUPLICATE WHAT'S GOING ON HERE. I'VE GOT ONE PLAINTIFF WHO'S FILED ONE LAWSUIT REGARDING ONE INCIDENT. AND THE TESTIMONY THAT I WILL PERMIT MUST PERTAIN TO THIS INCIDENT AND THIS PLAINTIFF.

SO, TO THE EXTENT THE DEFENDANTS ARE SEEKING A MOTION TO EXCLUDE TESTIMONY OF OTHER WITNESSES REGARDING INCIDENTS THAT ARE WHOLLY UNRELATED TO THE INCIDENT AT ISSUE, THE MOTION WILL BE GRANTED. OKAY?

BY MS. GRODNER: YOUR HONOR, THIS IS WITH

REGARDS TO RESERVING RIGHTS ON THAT. IS THE FIFTH CIRCUIT RULE IS, I WOULD HAVE TO ATTEMPT TO OFFER THAT EVIDENCE TO -- TO HAVE ANY TYPE OF BASIS TO -- TO SAY THAT I SHOULD HAVE BEEN ALLOWED TO DO THAT AT TRIAL. SO, I WOULD ASK THAT I BE ALLOWED OFF THE RECORD AT SOME POINT TO AT LEAST CALL THESE INDIVIDUALS AND GET A RULING ON THE RECORD, IN THE EVENT THAT SOME RECORD MAY BE NEEDED LATER. WITHOUT ANY DISRESPECT TO YOUR HONOR, OUT OF THE PRESENCE OF THE JURY.

BY THE COURT: I UNDERSTAND. I UNDERSTAND, MS GRODNER. I'LL CONSIDER YOUR REQUEST AND --

BY MS. GRODNER: THANK YOU, YOUR HONOR.

BY THE COURT: -- I'LL RULE ON THAT PRIOR TO TRIAL. OKAY?

OKAY. NEXT WE HAVE A MOTION FILED AT RECORD DOCUMENT 87, WHICH IS A MOTION IN LIMINE FILED BY THE PLAINTIFF. AND THIS IS YET ANOTHER MOTION TO SUPPRESS EVIDENCE. AND, SPECIFICALLY, MS. GRODNER, YOU'RE SEEKING TO SUPPRESS EVIDENCE THAT A SUBSTANCE, SOME SORT OF ILLEGAL DRUG, WAS FOUND ON THE PLAINTIFF AT THE TIME OF THE INCIDENT. IS THAT CORRECT OR ARE YOU ALSO SEEKING TO SUPPRESS ANY EVIDENCE THAT THERE WAS A CONFIDENTIAL INFORMANT WHO PROVIDED INFORMATION THAT RESULTED IN THE ENCOUNTER WITH THE PLAINTIFF, OR BOTH?

BY MS. GRODNER: ACTUALLY, YOUR HONOR, THIS MOTION SEEKS -- WITH REGARD TO THE SUBSTANCE THAT THEY'RE CALLING MOJO, I BELIEVE THAT THEY'RE GOING TO OFFER TESTIMONY THAT IT IS A ILLEGAL DRUG, SOME SORT OF -- I'VE ONLY HEARD THAT THROUGH THIS CASE SOME SORT OF MARIJUANA-TYPE SUBSTANCE. AND THEY -- WE'RE NOT AWARE OF

ANY LABORATORY TESTS, SCIENTIFIC TESTS OR OTHERWISE THAT WOULD INDICATE THAT, IN FACT, WHATEVER SUBSTANCE, IF ANY, THAT WAS FOUND, WAS CLASSIFIED ILLEGAL UNDER ANY LAW OF THIS STATE OR FEDERAL LAW THAT WE KNOW OF. THERE WAS NO SCIENTIFIC TESTING DONE.

SO, WE WOULD LIKE TO EXCLUDE FROM EVIDENCE ANY SUGGESTION OR TESTIMONY THAT IT WAS AN ILLEGAL SUBSTANCE.

BY THE COURT: OKAY. VERY WELL. AND I THINK CORRECTLY, THE MOTION FOR PROTECTIVE ORDER WAS ACTUALLY FILED BY THE DEFENDANT.

SO, MS. COLLIER, LET ME GIVE YOU AN OPPORTUNITY TO REPLY TO THE PLAINTIFF'S MOTION IN LIMINE.

BY MS. COLLIER: I'M NOT QUITE SURE I UNDERSTAND MS. GRODNER'S ARGUMENT. SHE'S NOT SEEKING TO EXCLUDE EVIDENCE OF THE CONTRABAND THAT WAS FOUND ON OFFENDER ROBINSON? JUST THAT IT WAS ILLEGAL?

BY THE COURT: MS. GRODNER, ARE YOU SEEKING TO SUPPRESS ANY EVIDENCE THAT CONTRABAND WAS FOUND ON THE PLAINTIFF?

BY MS. GRODNER: YES, YOUR HONOR. THAT CONTRABAND WAS FOUND ON HIM, NUMBER ONE.

AND, NUMBER TWO, IF THE COURT ALLOWS HIM ANY DISCUSSION THAT A SUBSTANCE WAS FOUND ON HIM, THAT THEY BE -- NOT BE ALLOWED TO SAY THAT IT IS A ILLEGAL SUBSTANCE DETERMINED TO BE MOJO, IN THE ABSENCE OF ANY SCIENTIFIC TESTING.

BY THE COURT: OKAY. SO, IF, MS. COLLIER, WHAT MS. GRODNER IS ASKING, OKAY, ASSUMING THERE'S SOME TESTIMONY THAT A SUBSTANCE OF SOME SORT WAS RETRIEVED FROM THE PERSON -- THE PLAINTIFF, THERE'S NO EVIDENCE THAT IT WAS, IN FACT, AN ILLEGAL DRUG. IS SHE RIGHT?

BY MS. COLLIER: AS FAR AS I KNOW, I DON'T KNOW WHETHER OR NOT THERE IS EVIDENCE THAT IT WAS AN ILLEGAL DRUG. I KNOW THAT -- THAT THE FACT THAT THERE WAS CONTRABAND ACTUALLY FOUND ON HIM, THAT THERE WAS A SUBSTANCE ON HIM THAT'S CONSIDERED CONTRABAND INSIDE OF A PRISON. THAT'S VERY RELEVANT TO THIS CASE.

BY THE COURT: NOW, DESCRIBE TO ME WHAT MAKES IT CONTRABAND.

BY MS. COLLIER: WELL, IT'S INSIDE A PRISON. THERE ARE A LOT OF THINGS THAT ARE CONSIDERED CONTRABAND --

BY THE COURT: CORRECT.

BY MS. COLLIER: -- AND LOTS OF THINGS THAT

THEY'RE NOT ALLOWED TO HAVE. THEY AREN'T ALLOWED TO HAVE MARIJUANA. THIS WAS WHAT THEY CALL MOJO. IT'S LIKE A FAKE OR SYNTHETIC MARIJUANA. THEY'RE NOT ALLOWED TO HAVE THAT. BUT, THEN, HE'S -- HE'S AN OFFENDER INSIDER OF A PRISON.

BY THE COURT: OH, I UNDERSTAND THAT.

BY MS. COLLIER: HE'S NOT ALLOWED TO ---

BY THE COURT: AND THERE'S NO QUARREL ABOUT THAT.

WHAT IT THINK WHAT MS. GRODNER IS CONCERNED ABOUT, TYPICALLY, IN CERTAINLY CRIMINAL CASES, THE STATE IS REQUIRED TO COME IN AND SAY, WE KNOW THIS IS AN ILLEGAL SUBSTANCE. WE KNOW THIS IS A DRUG BECAUSE WE SEND IT TO THE DEA LAB OR THE STATE POLICE LAB AND IT WAS TESTED AND CONFIRMED TO BE A DRUG.

AND HER CONCERN IS, IS THAT THERE'S CERTAINLY BEEN NO EVIDENCE TO SUGGEST THAT THAT HAPPENED HERE. THAT THERE MAY HAVE BEEN SOME SUBSTANCE REMOVED FROM THE PERSON OF THE PLAINTIFF, BUT WE DON'T -- THERE'S NO EVIDENCE THAT IT IS, IN FACT, DRUGS.

NOW, I DON'T THINK THERE'S ANY DISPUTE THAT WHATEVER WAS REMOVED FROM THE PERSON OF THE PLAINTIFF WAS BELIEVED TO BE DRUGS. AND I WILL

CERTAINLY ALLOW EVIDENCE OF THAT TO THE EXTENT THAT WAS A MOTIVATING FACTOR FOR THE DEFENDANTS DOING WHATEVER THEY DID.

BUT I THINK MS. GRODNER IS CORRECT THAT UNLESS YOU HAVE EVIDENCE THAT EVEN A SUBSTANCE THAT'S SUSPECTED TO BE A DRUG IS CONSIDERED TO BE CONTRABAND ON A CONTRABAND LIST OF SOME SORT, I, TOO, WOULD HAVE CONCERNS ABOUT TESTIMONY EMPHATICALLY DECLARING TO THE JURY THAT THE SUBSTANCE FOUND ON THE DEFENDANT WAS, IN FACT, A DRUG WHEN, IN FACT, THERE'S BEEN NO CONFIRMATION OF THAT THROUGH ANY TYPE OF PHARMACOLOGICAL MEANS OR TESTING. DO YOU UNDERSTAND MY POINT?

BY MS. COLLIER: YES, SIR. I DO.

BY THE COURT: SO, IN OTHER WORDS, WE'RE MAKING AN ASSUMPTION. I THINK MS. GRODNER IS BEING CAREFUL. SHE DOESN'T WANT THAT ASSUMPTION TO SORT OF RULE THE DAY HERE WITHOUT ANY SCIENTIFIC CONFIRMATION.

AND, SO, FOR THAT REASON, WHAT I WILL PERMIT, AND YOU CAN TELL ME ON THE MORNING OF TRIAL IF I'M WRONG. IF YOU FIND A DRUG -- A LAB TEST, FINE. BUT ABSENT THAT, I WILL CERTAINLY ALLOW TESTIMONY THAT THE DEFENDANT -- AN ITEM WAS FOUND ON THE PERSON OF THE DEFENDANT THAT

WAS BELIEVED TO BE CONTRABAND. OKAY? SO. ALL RIGHT?

BY MS. COLLIER: THANK YOU.

BY THE COURT: ALL RIGHT. IN OTHER WORDS, THE MOTION IN LIMINE IS GRANTED, BUT NOT THE MOTION TO SUPPRESS. IN OTHER WORDS, I WILL ALLOW TESTIMONY ABOUT SOMETHING HAVING BEEN FOUND. BUT YOU HAVE TO BE CAREFUL NOT TO EMPHATICALLY DECLARE THAT IT WAS DRUGS ABSENT SOME CONFIRMATION OF THAT. OKAY?

AND, FINALLY, I HAVE THE MOTION IN -- FOR A PROTECTIVE ORDER FROM THE PLAINTIFF -- EXCUSE ME, FROM THE DEFENDANTS SEEKING TO EXCLUDE THE IDENTITY OF THE CONFIDENTIAL INFORMANT IN THE CASE OR, IN THE ALTERNATIVE, REQUESTING THAT THE CONFIDENTIAL INFORMANT'S IDENTITY BE CONCEALED AT TRIAL.

AGAIN, MS. COLLIER, LET ME LET YOU BE HEARD ON THIS ISSUE.

BY MS. COLLIER: YOUR HONOR, WE FILED THIS MOTION FOR CONCERN OF THE SAFETY AND THE SECURITY OF THIS CONFIDENTIAL INFORMANT. WE'VE ALREADY BEEN BEFORE THE COURT BEFORE, BEFORE THE MAGISTRATE, IN THIS PROCEEDING ABOUT THIS. THE CONFIDENTIAL INFORMANT'S NAME WAS INADVERTENTLY

GIVEN DURING DISCOVERY, DURING DEPOSITION. AND, SO, WE SOUGHT TO PROTECT HIS IDENTITY THEN. THE COURT WAS VERY CAREFUL IN THAT RULING AND EXPRESSED SOME SERIOUS CONCERNS ABOUT THE SAFETY AND SECURITY OF THIS PARTICULAR PERSON.

AND, SO, WHAT WE’RE SEEKING TO DO IS, IF -- IF HE’S ALLOWED TO TESTIFY, IN SOME WAY TO CONCEAL HIS IDENTITY. THE COURT IN THE RULING EARLIER INDICATED THAT IT WAS OKAY FOR THE COUNSEL OF RECORD TO KNOW THE IDENTITY OF THIS WITNESS, OF THIS CONFIDENTIAL INFORMANT. BUT THERE WAS NO INDICATION THAT THE PARTIES WERE TO KNOW WHO THIS PERSON WAS. AND, OF COURSE, YOU KNOW IN OPEN COURT, OBVIOUSLY, HIS IDENTITY IS GOING TO BE DISCLOSED.

BUT IT’S NOT JUST THAT. ALSO, THIS PARTICULAR WITNESS IS JUST IRRELEVANT UNDER 402. IT DOESN’T REALLY MATTER WHETHER OR NOT THERE WAS A TIP THAT WAS GIVEN BY HIM. SO, EVEN PRESUMING THAT THIS WITNESS GAVE FAVORABLE TESTIMONY FOR OFFENDER ROBINSON, IT DOESN’T REALLY MATTER. THE SEARCH WAS STILL PERFORMED WITHIN THE CONFINES OF THE POLICY AND WITHIN THE CONFINES OF THE CONSTITUTION.

THE POLICY SAYS THAT A CAPTAIN OR ABOVE CAN

ORDER A SEARCH. THAT'S EXACTLY WHAT HAPPENED HERE. SO, EVEN IF MAJOR BABIN WAS A CAPTAIN AT THAT TIME, EVEN IF HE DIDN'T GET A TIP FROM THIS PARTICULAR PERSON, THIS CONFIDENTIAL INFORMANT, IT STILL DOESN'T MATTER. SO, THE TESTIMONY IS JUST GOING TO BE IRRELEVANT FOR THIS CASE.

AND CONSIDERING THE -- YOU KNOW, THE SAFETY OF THIS INDIVIDUAL INVOLVED, YOUR HONOR, WE JUST ASK THAT, YOU KNOW, EVEN IF YOU DON'T RULE -- IF YOU RULE UNFAVORABLY FOR US ON THE MOTION IN LIMINE, WE ASK THAT SOMEHOW HIS IDENTITY BE CONCEALED AT TRIAL.

BY THE COURT: OKAY, MS. COLLIER. LET ME HEAR FROM MS. GRODNER ON THIS POINT.

BY MS. GRODNER: YOUR HONOR, THEIR REASON FOR, I THINK, ALLEGED FOR INITIATING THIS ENTIRE PROCESS AND TAKING OUR CLIENT AWAY FROM WHAT HE WAS DOING AND DRAGGING HIM INTO THE BATHROOM AND DOING THIS ROUGHHOUSE SEARCH, WAS BECAUSE OF A CONFIDENTIAL INFORMANT. NOW, WE KNOW WHO THE CONFIDENTIAL INFORMANT IS. WE'D LIKE -- WE THINK THAT HE WILL APPEAR AT TRIAL. AND HE WILL PROBABLY TESTIFY HE DID NOT GIVE THEM SUCH INFORMATION THAT THEY SAID HE DID.

NOW, THAT -- THAT BEARS ON CREDIBILITY OF

THESE OFFICERS. THAT THEY SAY, OH, WELL, WE DID THIS BECAUSE OF X. WHEN, IN FACT, HIS TESTIMONY IS, MORE PROBABLY THAN NOT, GOING TO BE, THAT'S NOT TRUE.

SO, YOU KNOW, WHETHER A STORY HAS A CHINK IN IT AT THE FIRST PIECE OF MAIL IN THE ARMOR, I MEAN, I THINK A JURY COULD FIND THAT THE REST OF THE TESTIMONY IS EQUALLY CHALLENGED SUBJECT TO CHALLENGE ON THE ISSUE OF CREDIBILITY.

SO, OBVIOUSLY, THIS TESTIMONY WE FEEL IS VERY RELEVANT TO THE CREDIBILITY OF THESE OFFICERS, PARTICULARLY WHEN THEY GOT TOGETHER AFTERWARDS AND WROTE THESE REPORTS AND MADE THESE CLAIMS.

BY THE COURT: WELL, WHAT I'VE HEARD MS. COLLIER SAY, THOUGH, THAT IN HER JUDGMENT -- HER ARGUMENT IS THAT IT REALLY DOESN'T MATTER ANYWAY BECAUSE A MAJOR COULD ORDER A SEARCH AT ANY TIME. AND THAT'S ESSENTIALLY WHAT HAPPENED HERE. IS THAT CORRECT, MS. COLLIER?

BY MS. COLLIER: YES, SIR.

BY THE COURT: SO, WHETHER THE MAJOR ORDERED THE SEARCH ON A HUNCH, WHICH IN A PRISON SITUATION HE'S ENTITLED TO DO, OR BECAUSE OF INFORMATION FROM A CONFIDENTIAL INFORMANT OR

WHATEVER, IT'S NOT RELEVANT.

BY MS. GRODNER: WELL, IF HE SAYS THAT WE DID THIS BECAUSE WE GOT A LETTER FROM THE PRESIDENT, AND WE PROVED HE DID NOT GET A LETTER FROM THE PRESIDENT, THEN THAT SHOWS HE'S WILLING TO BEAR FALSE STATEMENTS --

BY THE COURT: THE PROBLEM --

BY MS. GRODNER: -- UNDER OATH --

BY THE COURT: -- THE OTHER PROBLEM ---

BY MS. GRODNER: -- THAT BEARS DIRECTLY ON HIS CREDIBILITY.

BY THE COURT: MS. GRODNER, I'M SPEAKING.

BY MS. GRODNER: I'M SORRY, YOUR HONOR.

BY THE COURT: THE OTHER PROBLEM HERE IS THAT I HAVE TO QUESTION. I MEAN, I HAVE AN OBLIGATION TO QUESTION FIRST, WHETHER SUCH WITNESSES LIKELY TO PRESENT TRUTHFUL TESTIMONY, GIVEN THE FACTORS HE OR SHE WILL FACE WHEN HE OR SHE LEAVES THE COURTROOM. I MEAN, FRANKLY, I DON'T EXPECT AN INMATE WITNESS WHO MAY BE CONCERNED FOR HIS SAFETY TO GET ON THE WITNESS STAND AND SAY, YES, I -- I'M THE ONE WHO RATTED OUT, DROPPED IT DOWN, WHATEVER EUPHEMISM OR PHRASE YOU WANT TO USE, ON THE PLAINTIFF. I DON'T THINK HE'S GOING TO SAY. AGAIN, OUT OF

HIS OWN PERSONAL SAFETY.

AND, SO, I DON'T THINK THAT GETS US VERY FAR. AND I DON'T THINK IT'S GOING TO BE PARTICULARLY HELPFUL TO THE JURY. BECAUSE, AGAIN, I DON'T THINK THAT IT WILL BE RELIABLE TESTIMONY.

SO, DO YOU THINK THAT HE -- THAT HE WOULD GET ON THE WITNESS STAND AND TESTIFY, EVEN IF HE WAS? I MEAN, THE OTHER THING IT PRESENTS A HE SAID, SHE SAID. THAT WITNESS THAT YOU, THE IDENTITY OF WHOM YOU KNOW, YOU WILL CALL HIM AND HE'LL SAY, OH, ABSOLUTELY NOT. I DIDN'T GIVE ANY INFORMATION. THEN WE'LL HAVE THE MAJOR OR SOME OTHER PERSON TO WHOM THE INFORMATION WAS ALLEGEDLY GIVEN WHO IS GOING TO TESTIFY, OH, YES, HE DID.

SO, IT'S A HE SAID SHE SAID, WHICH IS AN ISSUE THAT, TO ME, IS SECONDARY TO THE CORE ISSUES IN THIS CASE. AND THAT IS, WHATEVER THE MOTIVATION FOR CONDUCTING THE SEARCH OF YOUR CLIENT, ACCORDING TO THE ALLEGATIONS, IT WENT TOO FAR, AND THAT EXCESSIVE FORCE WAS USED.

SO, AGAIN, I TEND TO SEE THAT ISSUE AS A DISTRACTION. I WOULD ASSUME, AND I'M SURE YOU WOULDN'T DISAGREE WITH ME, THAT THERE WILL BE

SOME DISAGREEMENT AS TO WHO -- WHETHER THE INFORMATION WAS PROVIDED OR NOT PROVIDED. SO, AGAIN, I DON'T THINK THAT GETS US ANYWHERE.

BUT YOU CERTAINLY, AGAIN, CAN QUESTION THE DEFENDANTS IF THEY TESTIFY ABOUT ANY OTHER FACTORS, WHY THEY ACTED THE WAY THEY DID. YOU CAN -- I WILL ALLOW TESTIMONY THAT THERE WAS INFORMATION RECEIVED FROM SOME SOURCE. BUT BEYOND THAT, I JUST DON'T THINK IT GETS US ANYWHERE.

BY MS. GRODNER: YOUR HONOR, YOU KNOW, YOU TALK

ABOUT FEAR OF TESTIMONY. ALL OF THESE INMATE WITNESSES ARE IN FEAR. AND THEY DON'T -- THEIR FEAR IS NOT OF OTHER INMATES. BUT THE GREATEST FEAR IS RETRIBUTION FROM THE VERY GUARDS THAT ARE THERE TO PROTECT THEM. SO, THE THREAT THAT HE HAS THAT OTHER INMATES MIGHT GET IS NO MORE GREATER THAN THE THREAT THAT ANY OF OUR WITNESSES HAVE THAT THE GUARDS MIGHT GET THEM.

SO, THEY ARE -- OUR -- THE GUARDS HAVE MORE ACCESS TO OUR WITNESSES THAN THE INMATES DO TO THIS INDIVIDUAL BECAUSE HE'S LOCKED IN A CELL. SO, HE HAS IN NO MORE DANGER THAN ANY OF OUR WITNESSES BY COMING HERE TO TESTIFY AS TO WHAT

HE WILL SAY UNDER OATH AS BEING THE TRUTH.

BY THE COURT: WELL, YOU -- ARGUABLY, YOU MAY BE RIGHT. I'M IN NO POSITION AT THIS POINT TO JUDGE THE CIRCUMSTANCES UNDER WHICH HE IS INCARCERATED OR ANY PROCEDURES THAT COULD BE IN PLACE TO PROTECT HIM WHETHER HE IS OR IS NOT A CONFIDENTIAL INFORMANT.

BUT, AGAIN, I JUST BELIEVE, AND WILL CONCLUDE, THAT IT IS SIMPLY NOT RELEVANT THAT IN WHETHER -- IN OTHER WORDS, IF THIS WAS A CRIMINAL CASE, MS. GRODNER, AS YOU KNOW, I WOULD ABSOLUTELY PERMIT YOU TO QUESTION THE OFFICERS ABOUT THE CIRCUMSTANCES REGARDING THE RECEIPT OF THE INFORMATION FROM A CONFIDENTIAL SOURCE. YOU WOULD HAVE THE ABILITY TO CROSS EXAMINE THE OFFICERS. BECAUSE, AGAIN, IN FACT, THE STATE WOULD HAVE THE FIRM OBLIGATION TO PROVE THAT THIS WAS A RELIABLE SOURCE WHO HAS PROVIDED RELIABLE INFORMATION IN THE PAST. BUT THIS ISN'T A CRIMINAL CASE. THIS IS A CIVIL CASE. THE STANDARD IS MUCH LOWER. AND I THINK THE IMPORTANT THING IS THAT WHATEVER THE MOTIVATIONS OF THE OFFICERS ARE, THEY CAN TESTIFY ABOUT THAT. YOU, ON THE OTHER HAND, CAN CROSS EXAMINE THEM ABOUT THEIR MOTIVATION.

BUT AT THE END OF THE DAY, AGAIN, I DON'T PARTICULARLY -- THINK IT'S PARTICULARLY RELEVANT, AND COULD RESULT IN ISSUES THAT WILL NOT BE BENEFICIAL TO THE JURY'S DELIBERATIONS ON THE ULTIMATE ISSUES IN THIS CASE. AND FOR THAT REASON, I WILL GRANT THE STATE'S MOTION IN LIMINE AND EXCLUDE THE TESTIMONY OF ANY CONFIDENTIAL INFORMANT. OKAY?

BY MS. GRODNER: WOULD YOUR HONOR CONSIDER A PROFFER, THAT IF CALLED, HE WOULD TESTIFY TO X? IF IT -- IF IT COMES UP AT TRIAL, WOULD YOUR HONOR CONSIDER THAT?

BY THE COURT: LET ME -- I WILL -- OUTSIDE OF THE PRESENCE OF THE JURY I WOULD CONSIDER THAT. BUT I ASSUME THAT IF CALLED HE WAS GOING TO TESTIFY THAT, WELL, NO, I DIDN'T. SO, AGAIN, IT DOESN'T GET US ANYWHERE. BUT ASSUME THAT'S THE CASE. BUT I CERTAINLY WOULD NOT -- I WILL NOTE YOUR OBJECTION FOR THE RECORD. BUT I DON'T EVEN THINK A PROFFER IS APPROPRIATE IN THIS CASE.

BY MS. GRODNER: THANK YOU, YOUR HONOR.

BY THE COURT: BUT, AGAIN, YOUR OBJECTION IS NOTED FOR THE RECORD.

ALL RIGHT. NOW, I'VE MADE MY RULINGS WITH RESPECT TO ALL THE PENDING MOTIONS IN LIMINE.

AND I WOULD HOPE THAT THAT WOULD REDUCE THE NUMBER OF INMATE WITNESSES THAT WILL TESTIFY IN THIS CASE.

LET ME REMIND COUNSEL THAT WE HAVE THREE DAYS. TYPICALLY A CASE LIKE THIS IS TRIED IN TWO DAYS. AS YOU ALL KNOW, I HAVE A VERY, VERY, VERY, VERY BUSY DOCKET HERE. BUT I'VE ALLOCATED THREE DAYS FOR THIS TRIAL.

SO, MS. GRODNER, LET ME ASK YOU TO GO THROUGH YOUR WITNESS LIST. YOU'VE GOT TO PARE THIS DOWN. THERE'S JUST NO WAY WE CAN GET ALL OF THESE INMATE WITNESSES HERE.

NOW, TODAY IS WEDNESDAY, THE 18TH. LET ME ASK YOU TO REASSESS YOUR WITNESS LIST, RE-EVALUATE IT ON THE BASIS -- CONSIDERING MY RULINGS, CONFER WITH MS. COLLIER AND MR. SANDERS AND SEE IF YOU ALL CAN'T COME TO SOME AGREEMENT TO REDUCE THE NUMBER OF WITNESSES THAT YOU INTEND TO PUT ON THE WITNESS STAND HERE. OKAY?

BY MS. GRODNER: YOUR HONOR, MAY I ADDRESS ONE ISSUE WITH YOU? YOUR HONOR, MAY I ADDRESS ONE ISSUE WITH THE COURT? IT DEALS WITH ---

BY THE COURT: WITH RESPECT TO THE WITNESSES?

BY MS. GRODNER: YES, YOUR HONOR.

BY THE COURT: SURE.

BY MS. GRODNER: WE HAD FILED A MOTION. AND I'M A LITTLE -- I MIGHT BE A LITTLE OFF ON THIS. WE HAD FILED A MOTION TO PRODUCE OUR WITNESSES, I THINK, BY VIDEO.

BY THE COURT: RIGHT.

BY MS. GRODNER: AND I DID NOT GET A CHANCE BETWEEN YOUR HONOR'S RULING -- YOUR HONOR MADE A RULING THAT HE WANTED LIVE TESTIMONY.

BY THE COURT: CORRECT.

BY MS. GRODNER: WE THEN TURNED AROUND AND FILED A MOTION, I GUESS WE SHOULD HAVE FILED IT AS AN EMERGENCY MOTION, TO HAVE SUBPOENAS AD TESTIFICANDUM ISSUED IN THIS CASE. AND I -- I -- MY MIND IS JUST BLANK RIGHT NOW, YOUR HONOR. BUT I DON'T THINK THAT WE'VE HAD -- I DON'T THINK THAT WE FILED A SUPPLEMENTAL MOTION IN THIS PARTICULAR FILE TO HAVE SUBPOENA DUCES TECUM AD TESTIFICANDUM TO DOC OR OTHERS TO HAVE THESE INDIVIDUALS TRANSFERRED. I THINK WE JUST FILED -- AND I'D HAVE TO CHECK TO ---

BY THE COURT: WELL, LET ME TELL YOU RIGHT NOW. PAM, WHAT HAVE WE DONE? WE ISSUED -- HAVE WE ISSUED THOSE YET?

BY THE CLERK: NO, SIR.

BY MS. GRODNER: AND I THINK WE SHOULD HAVE

ANTICIPATED AND FILED BOTH MOTIONS, YOUR HONOR. I'M NOT SURE THAT WE DID.

BY THE COURT: WELL, HOLD ON. ALL RIGHT. MS. GRODNER, LET ME TELL YOU. THIS IS ONE OF THE ISSUES -- AND ONE OF THE MATTERS OF THIS TRIAL THAT'S BEEN VERY, VERY TROUBLING WITH ME. BECAUSE, FRANKLY, YOU'VE MISSED A LOT OF DEADLINES. AND WHEN LAWYERS MISS DEADLINES, THE CASE I HAD RIGHT BEFORE THIS CASE WAS CALLED, I WILL BE ISSUING ORDERS TO SHOW CAUSE WHY SOMEONE IN THE CITY ATTORNEY'S OFFICE IS NOT SANCTIONED FOR FILING BY FIVE AND A HALF MONTHS OR FAILING TO FILE WITHOUT JUST CAUSE FOR FIVE AND A HALF MONTHS, A REPLY TO CERTAIN MOTIONS ON A CONSTITUTIONAL QUESTION.

NOW, HERE, WE HAD DEADLINES -- YOU MISSED A NUMBER OF DEADLINES. AND, AGAIN, WHEN YOU DO THAT, MS. GRODNER, IT MAKES IT TOUGH ON ME. IT MAKES IT TOUGH ON MY STAFF. IT MAKES IT TOUGH ON THE STATE TO TRY TO GET AS MANY WITNESSES HERE. IT MAKES IT TOUGH ON THE U.S. MARSHALS TO TRY TO ARRANGE FOR THESE FOLKS TO COME HERE. IT TAKES TIME TO PREPARE FOR THIS. THAT'S WHY I SET DEADLINES.

BY MS. GRODNER: I'M IN THE DARK, YOUR HONOR.

YOU'LL HAVE TO TELL ME WHICH DEADLINES YOUR HONOR IS REFERENCING.

BY THE COURT: THESE MOTIONS -- FIRST OF ALL, LET'S BEGIN WITH THE FAILURE TO EVEN PROVIDE JURY CHARGES. LET'S START WITH THAT FIRST. AND YOU SAW MY RULING ON THAT.

BY MS. GRODNER: YES, SIR.

BY THE COURT: JUST BECAUSE YOU FILE AND YOU -- YOU KNOW, AT SOME POINT OR EXCHANGE AT SOME POINT, EVEN, SOME JURY INSTRUCTIONS OR A JOINT OR EVEN PROPOSED, THE VERDICT FORM DOES NOT -- I MEAN THAT THEY'RE JOINT SUBMISSIONS. AND THAT'S WHAT I CLEARLY -- THE PRE-TRIAL ORDER REQUIRES BY A CERTAIN DATE.

BY MS. GRODNER: YES, YOUR HONOR. BUT I -- I DON'T KNOW WHAT -- WHY WE GOT A LITTLE MISCOMMUNICATION. WHEN WE DID OUR -- OUR SCHEDULING, WHEN WE DID OUR PRE-TRIAL CONFERENCE, WE HAD ALREADY SUBMITTED. AND MR. -- THE PREVIOUS ATTORNEY AND I HAD SAT ON THE PHONE AND WORKED OUT A JOINT -- DID THE JOINT PRE-TRIAL SUBMISSION, AND IT'S ALREADY FILED INTO THE RECORD AS "EXHIBIT NUMBER 88." THAT IS A JOINT SUBMISSION.

BY THE COURT: MS. COLLIER, HAVE YOU BEEN ABLE

TO CONFIRM THAT?
BY MS. GRODNER: AND I THINK THAT SHE MISUNDERSTOOD WHAT I SAID ON THE PHONE.
BY THE COURT: LET ME ASK MS. COLLIER.
BY MS. GRODNER: SURE.
BY THE COURT: IS THAT YOUR UNDERSTANDING, MS. COLLIER, THAT THERE WAS A MISUNDERSTANDING?
BY MS. COLLIER: SIR, MY ---
BY THE COURT: JUST A MINUTE.
BY MS. COLLIER. OH, I'M SORRY.
BY THE COURT: ALL RIGHT. OKAY, MS. COLLIER.
BY MS. COLLIER: YOUR HONOR, MY UNDERSTANDING WAS THAT THERE WAS A JOINT PRE-TRIAL ORDER THAT WAS FILED AT RECORD DOCUMENT 88. AND FROM MY UNDERSTANDING, THERE WAS COMMUNICATION ON THE PHONE BETWEEN MR. DENICOLA AND MS. GRODNER. BUT, AGAIN, I WASN'T INVOLVED IN THAT DIRECTLY AT THAT TIME. MY UNDERSTANDING WAS THAT THE -- WHAT WAS FILED WAS NOT WHAT THEY HAD VERBALLY AGREED TO ON THE PHONE THROUGH SOME SORT OF -- FOR SOME SORT OF REASON. AND SO THAT MR. DENICOLA AT THAT POINT THEN HAD TO FILE HIS OWN -- HIS PROPOSED JURY INSTRUCTIONS AND CHARGES AND WHATNOT, SEPARATELY.

MY UNDERSTANDING AT OUR PRE-TRIAL CONFERENCE IN THIS CASE WAS THAT -- AND I BELIEVE IT'S ON RECORD DOCUMENT 99, THAT WE WERE SUPPOSED TO FILE JOINT, PROPOSED JURY INSTRUCTIONS OR JURY CHARGES.

BY THE COURT: IT WAS RECORD DOCUMENT 99.

THAT'S CORRECT. AND TO DO SO BY JUNE 16TH.

BY MS. COLLIER: THAT WAS MY UNDERSTANDING.

BY THE COURT: ALL RIGHT. AND, MS. GRODNER,

THAT'S MY POINT. THERE WERE NO JOINT SUBMISSIONS. THIS WAS SEPARATE AND APART FROM WHATEVER YOU DISCUSSED WITH PRIOR COUNSEL FOR THE STATE OR FOR THE DEFENDANTS IN THE CASE. THE FACT OF THE MATTER IS, THAT THE INSTRUCTIONS REQUIRED THERE TO BE THREE BENCH BOOKS FILED, AS WELL AS THE JOINT JURY INSTRUCTIONS AND VERDICT FORM BY JUNE 16TH. AND YOU FAILED TO ABIDE BY THAT. I DIDN'T GET THE BENCH BOOKS UNTIL WE HAVE TO -- WE CALLED. YOU CALLED, I THINK, SEEKING -- NOTHING WAS FILED INTO THE RECORD.

BY MS. GRODNER: I CAN EXPLAIN, YOUR HONOR.

BY THE COURT: THE FACT IS, WE GOT THAT LATE.

WE DIDN'T GET THE PROPOSED JURY -- THE JOINT, PROPOSED JURY INSTRUCTIONS. AGAIN, YOU HAVE HEARD DEFENDANTS FILED SOMETHING, BUT THEY

INDICATED THAT DESPITE THEIR EFFORTS TO CONFER WITH YOU ABOUT IT, THEY WERE UNABLE TO DO SO.

BY MS. GRODNER: YOUR HONOR, I CAN EXPLAIN. WE DID DO THE JOINT CHARGES. THEY WERE ATTACHED TO OUR PRE-TRIAL ORDER. THOSE WERE OUR JOINT CHARGES. WE TALKED ABOUT THIS AT THE CONFERENCE THAT WE HAD FILED JOINT CHARGES. MR. DENICOLA SAID THAT THERE WAS AN ERROR ON SOME -- SOME MINOR ERROR AND SO FORTH. AND YOUR HONOR SAID, I'M GOING TO ALLOW YOU ALL TO -- EITHER WHEN THE JURY GOES OUT OR SOMEWHERE IN THAT PERIOD OF TIME, SUBMIT ADDITIONAL CHARGES IF YOU NEED TO.

WHEN -- WHEN WE DID OUR INITIAL -- WHEN WE DID OUR INITIAL ---

BY THE COURT: TIME OUT. TIME OUT. PRINT OUT THAT DOCUMENT. WHAT DOCUMENT WAS THAT?

BY MS. GRODNER: 88, YOUR HONOR.

BY THE COURT: 99 WAS -- OH, 88?

BY MS. GRODNER: 88 WAS OUR JOINT SUBMISSION.

BY THE COURT: LET ME SEE IT.

BY MS. GRODNER: IT'S ATTACHED TO 88.

BY THE CLERK: DO YOU WANT THE ENTIRE DOCUMENT, JUDGE?

BY THE COURT: LET ME SEE IF I CAN CALL IT UP.

BY MS. GRODNER: YOUR HONOR, MAY I EXPLAIN ABOUT THE BENCH BOOKS WHILE WE'RE WAITING FOR THAT DOCUMENT?

BY THE COURT: YES.

BY MS. GRODNER: THANK YOU, YOUR HONOR.

YOUR HONOR, WITH REGARD TO THE BENCH BOOKS, IT WAS MY UNDERSTANDING THAT -- AT THE CONFERENCE THAT WE WERE TO -- THAT PLAINTIFFS WERE TO SUBMIT BENCH BOOKS. THEY WERE TO CONTAIN OUR JOINT EXHIBITS. THEY WERE TO CONTAIN PLAINTIFF'S EXHIBITS AND DEFENDANTS' EXHIBITS IN THREE-RING BINDERS. THAT WAS MY UNDERSTANDING. I INSTRUCTED MY STAFF TO DO THAT AND THEY WERE WORKING ON THAT.

I -- AT THE PRE-TRIAL CONFERENCE, I REMINDED THEM THAT I STILL HAD NOT RECEIVED THEIR EXHIBITS. ON THE DATE THAT THESE WERE DUE, THE 16TH, WE HAD SOME BACK-AND-FORTH DISCUSSIONS. AND I REMINDED THEM THAT I STILL DIDN'T HAVE THEIR EXHIBITS FOR US TO FINALIZE OUR BOOKS. AND I WAS INFORMED THAT THEY WERE GOING TO FILE THEIRS SEPARATELY AND THAT THEY WERE TOLD THAT THEY COULD FILE THEM BY -- ON A CD.

BY THE COURT: LET ME STOP YOU RIGHT THERE,

MS. GRODNER. YOU HAD AN OBLIGATION TO FILE SOMETHING BY THE DEADLINE. YOU FAILED TO DO IT. EVEN IF WHAT YOU BELIEVE -- WHAT -- EVEN THOUGH WHAT YOU IDEALLY WOULD HAVE LIKED TO HAVE INCLUDED IN YOUR BENCH BOOK, OBVIOUSLY -- YOU'RE TELLING ME THAT YOU WANTED TO INCLUDE RECORDS FROM THE DEFENSE AND THAT THEY DIDN'T PROVIDE TO YOU? THAT'S NOT AN EXCUSE. YOU COULD HAVE PROVIDED, AND LAWYERS DO IT ALL THE TIME, THEY PROVIDE THE BENCH BOOK. AND TO THE EXTENT A PARTY REFUSES OR FAILS TO PROVIDE SOMETHING TIMELY, THEY STILL LEAVE A SECTION IN THERE SO THAT AT SOME POINT, AFTER I HAVE TO ISSUE AN ORDER, AGAIN, WITH SANCTIONS, TO SUPPLY IT, I'LL INSERT IT INTO THE BOOK AT THAT LOCATION -- AT THAT POINT OF THE BOOK.

SO, MY POINT IS, IS THAT YOU HAD AN OBLIGATION TO SUBMIT SOMETHING TO ME AND YOU FAILED TO DO IT.

BY MS. GRODNER: THAT'S CORRECT, YOUR HONOR.

BY THE COURT: RIGHT. AND, SO, AND I'VE NOT

HEARD ANY GOOD REASON FOR NOT DOING IT. THIS IS A CASE THAT'S BEEN AROUND FOR TWO YEARS. THERE'S NO -- WE'VE KNOWN ABOUT THIS TRIAL DATE. WE'VE HAD THE PRE-TRIAL CONFERENCE. I IMPRESSED

UPON EVERYONE, GIVE ME A HARD COPY AND GIVE ME THE DISK. I MAY USE THE DISK. I MAY USE THE HARD COPY. I'LL MOST CERTAINLY WILL USE THE HARD COPY IF THIS GOES UP TO THE FIFTH CIRCUIT. I COULDN'T BE CLEARER ABOUT THAT. AND, YET, WITHOUT GOOD REASON YOU FAILED TO ABIDE BY MY INSTRUCTION.

BY MS. GRODNER: YOUR HONOR, IF I MAY CONTINUE TO ---

BY THE COURT: BUT YOU'RE NOT TELLING ME -- YOU'RE NOT -- YOU'RE NOT RESPONSIVE TO MY QUESTION. I'M TRYING TO GIVE YOU AN OPPORTUNITY TO TELL ME HOW IT IS THAT YOU MISSED THE DEADLINE.

BY MS. GRODNER: YES, YOUR HONOR. I ---

BY THE COURT: AND ALL I'M HEARING IS, WELL, THE PLAINTIFFS -- THE DEFENSE DIDN'T GIVE ME. I DON'T CARE ABOUT THAT. THEY HAVE AN OBLIGATION TO SUPPLY WHATEVER THEY THINK THEY'LL INTRODUCE AT TRIAL. IF THEY REFUSE TO PROVIDE YOU, YOU GIVE ME WHAT YOU ALREADY HAVE AND THEN WE'LL TAKE UP WHATEVER YOU ARE ENTITLED TO RECEIVE FROM THEM AND INCLUDE AT A LATER TIME. GIVE ME SOME INDICATION OF THAT. GIVE IT TO ME IN COMPLETE FASHION. BUT GIVE ME SOMETHING.

BY MS. GRODNER: CORRECT, YOUR HONOR. MY -- MY -- MY STAFF HAD TWO PEOPLE WORKING ON IT. AND THEY ---

BY THE COURT: LET ME STOP YOU RIGHT THERE, MS. GRODNER. I UNDERSTAND YOU HAVE STAFF. I KNOW YOUR STAFF IS BUSY. I KNOW YOU'RE BUSY. I HAVE CASES BEFORE -- I HAVE HUNDREDS OF CASES BEFORE ME.

BY MS. GRODNER: I KNOW, YOUR HONOR.

BY THE COURT: I HAVE A HARDWORKING STAFF, TOO. MY STAFF COMES IN AT 7:30 IN THE MORNING AND THEY LEAVE AT 7:30 AT NIGHT. THEY WORK WEEKENDS. WE DO WHAT WE HAVE TO DO. I CAN'T TELL A CIRCUIT, SORRY, I CAN'T GET THAT RULING UP TO YOU OR RECORD UP TO YOU BECAUSE I JUST DON'T HAVE THE STAFF. YOU KNOW THAT. WE DO WHAT WE HAVE TO DO. IF YOU HAVE TO BRING ON TEMPORARY, YOU DO THAT. BUT I CANNOT ALLOW LAWYERS TO COME TO ME AND SAY, WE WERE JUST TOO BUSY. AND, FRANKLY, THAT'S WHAT I'M HEARING FROM YOU.

BY MS. GRODNER: THAT'S -- THAT'S NOT WHAT I'M SAYING, YOUR HONOR. I'M SAYING THAT THE STAFF DID NOT -- HAD NOT RECEIVED THE DOCUMENTS. WE WERE THEN TOLD BY DEFENSE COUNSEL THAT THEY

WERE JUST GOING TO FILE THEIR'S SEPARATELY. WE THOUGHT WE WERE GOING TO GET THEIR EXHIBITS. WHEN WE DIDN'T RECEIVE THEIR EXHIBITS BY THE CLOSE OF BUSINESS, MY STAFF JUST DIDN'T FILE ANYTHING. THEY DIDN'T NOTIFY ME UNTIL -- I DIDN'T KNOW THEY WEREN'T BROUGHT DOWN HERE UNTIL WE GOT THE SANCTION ORDER.

BY THE COURT: WELL, THEN ---

BY MS. GRODNER: WE THEN, YOUR HONOR, WE DIDN'T GET THE ---

BY THE COURT: I'M SPEAKING, MS. GRODNER.

BY MS. GRODNER: YES, YOUR HONOR.

BY THE COURT: IN THE FUTURE, YOU WOULD BE WISE TO INSTRUCT YOUR STAFF TO GET -- TO ABIDE BY THE COURT'S INSTRUCTIONS. WITHOUT ALL THE EXCUSES. JUST ABIDE BY MY INSTRUCTIONS. AND DON'T WAIT TILL THE LAST MINUTE TO DO SO. DON'T CALL MY CHAMBERS AT THREE O'CLOCK ON THE DAY IT'S DUE, KNOWING -- SINCE YOU'VE KNOWN FOR WEEKS. DON'T WAIT TO THE LAST MINUTE TO CALL AND SAY, WE NEED IT. I DON'T GIVE EXTENSIONS OF TIME. I DON'T GRANT THOSE UNDER THOSE CIRCUMSTANCES, ABSENT REALLY, REALLY GOOD CAUSE. WHICH IS NOT THE CASE HERE. SO, I DON'T WANT TO HEAR ANYTHING MORE ABOUT THAT.

ALL I'M GOING TO TELL YOU IS THAT I'M GOING TO HAVE TO THINK ABOUT WHETHER YOU'RE GOING TO BE FIT TO PRACTICE IN THE FEDERAL COURT IF YOU'RE GOING TO CONTINUE TO IGNORE THESE DEADLINES.

AND THE OTHER ISSUE THAT CAME UP, YOU REPRESENTED IN YOUR MOTIONS FOR THE ISSUANCE OF SUBPOENAS TO WITNESSES THAT THE STATE DIDN'T OBJECT TO SOME OF THESE. NOW I'M INFORMED BY THE STATE THAT, YES, THEY DO OBJECT TO THE ISSUANCE OF SUBPOENAS TO CERTAIN OF THOSE. IS THAT CORRECT, MS. COLLIER?

BY MS. COLLIER: YES, SIR.

BY MS. GRODNER: AND, YOUR HONOR, THE REASON THAT WAS PUT, BECAUSE YOUR HONOR ISSUED AN ORDER SAYING THAT THEY WOULD HAVE TO BE LIVE TESTIMONY. NOW, THEY HAD MOTIONS PENDING ON -- ON -- SO, THAT YOUR HONOR ISSUED A RULING THAT HAS TO BE LIVE TESTIMONY, WE DIDN'T KNOW THAT THERE WAS ANY OBJECTION TO THEIR BEING LIVE TESTIMONY. THE ONLY WAY TO GET THEM HERE IS THE AD TESTIFICANDUM AND SO ---

BY THE COURT: WELL, LET ME ASK YOU THIS, MS. GRODNER. DID YOU CONFER WITH MS. COLLIER, MR. SANDERS OR ANYONE ELSE AT THE ATTORNEY

GENERAL'S OFFICE BEFORE YOU INCLUDED IN YOUR MOTION THAT THE STATE HAD NO OBJECTION?

BY MS. GRODNER: NO, YOUR HONOR. IT WAS SIMPLY ON THE JUDGE'S ORDER. I -- I ASSUME THAT ---

BY THE COURT: DO YOU UNDERSTAND THAT THERE'S A HUGE DIFFERENCE BETWEEN ACCORDING TO THE JUDGE'S ORDER, WE CAN DO THIS, AND SAYING THAT THE STATE HAS NO OBJECTION? YOU ESSENTIALLY LIED TO ME.

BY MS. GRODNER: I DIDN'T INTEND IT TO BE A LIE, YOUR HONOR. I JUST INTENDED TO GET -- THERE WAS ONLY TWO WAYS THE WITNESSES CAN BE PRODUCED, EITHER VIDEO OR AD TESTIFICANDUM.

BY THE COURT: WELL, I'M NOT TALKING ABOUT THAT. I'M NOT TALKING ABOUT THE SUBSTANCE HERE. I'M TALKING ABOUT THE FACT THAT YOU REPRESENTED TO THE COURT IN A PLEADING FILED IN MY COURT, THAT THE PLAINTIFFS -- THE DEFENDANTS HAD NO OBJECTION TO THE ISSUANCE OF THESE -- OF SUBPOENAS WHEN, IN FACT, THEY HAD OBJECTIONS.

AND NOT ONLY THAT, THERE WASN'T EVEN ANY MISUNDERSTANDING. BECAUSE BY YOUR OWN ADMISSION, YOU DIDN'T EVEN BOTHER TO CHECK WITH THE STATE ABOUT THAT.

BY MS. GRODNER: CORRECT.

BY THE COURT: AND I'M GOING TO TELL YOU. I'M GOING TO GIVE YOU AN OPPORTUNITY, ONE OPPORTUNITY, TO ADDRESS THAT BEFORE I MAKE A RULING ON THE MOTION -- ON THE ORDER TO SHOW CAUSE. BECAUSE I'M GOING TO TELL YOU RIGHT NOW. I JUST FLAT OUT THINK THAT'S A GROSS MISREPRESENTATION TO THE COURT.

I MEAN, YOU KNOW, THIS IS ROUTINE STUFF FOR LAWYERS. WHETHER IT'S A MOTION FOR AN EXTENSION OF TIME, AN OPPORTUNITY TO SET UP DISCOVERY SCHEDULES, YOU CONFER WITH YOUR OPPONENT, YOU REPRESENT TO THE COURT THAT BOTH SIDES HAVE CONFERRED. BOTH SIDES ARE IN AGREEMENT WITH THIS OR, YOU KNOW, PLAINTIFF IS MOVING FOR THIS. THERE'S NO OPPOSITION BY THE PLAINTIFF. YOU CAN'T EVEN PUT THAT IN A MOTION UNLESS YOU ACTUALLY, AFFIRMATIVELY PICK UP THE PHONE AND CALL YOUR OPPONENT, WHICH YOU DIDN'T DO. SO, I'M AT A LOSS TO EXPLAIN HOW YOU COULD HAVE INCLUDED THAT LANGUAGE IN YOUR MOTION.

BY MS. GRODNER: SIMPLY BECAUSE YOUR HONOR HAD ORDERED IT HAD TO BE THE OTHER WAY. SO, THAT, TO ME, INDICATED IT WAS, YOU KNOW, THAT'S AN EX PARTE MOTION.

BY THE COURT: BUT THERE'S A DIFFERENCE BETWEEN EX PARTE MOTION AND A MOTION THAT IS WITHOUT OPPOSITION. I MEAN, IT'S STILL TECHNICALLY EX PARTE. BUT WHEN YOU INCLUDE LANGUAGE -- AND I'M NOT GOING TO -- I'M NOT GOING TO BELABOR THIS POINT. THIS IS SO FUNDAMENTAL. IT'S SILLY TO EVEN SIT HERE AND DISCUSS THIS.

THE FACT OF THE MATTER IS, IS THAT YOU ADMITTED THAT, ALTHOUGH YOU'VE INDICATED IN THE MOTION THAT YOU CONFERRED WITH COUNSEL, THERE WAS NO OPPOSITION, YOU DIDN'T, IN FACT, CONFER WITH COUNSEL TO ENSURE THAT THERE WAS NO OPPOSITION.

AND, SO, ON THAT BASIS I WILL ISSUE SANCTIONS, MS. GRODNER. AND I'M GOING TO COUNSEL YOU THAT IF THAT HAPPENS AGAIN YOU WILL BE REMOVED FROM THE ROLES OF THIS COURT AND YOU WILL NOT BE PERMITTED TO PRACTICE WITHIN THE MIDDLE DISTRICT EVER AGAIN.

LET ME ALSO REMIND YOU THAT IF YOU ARE STRICKEN FROM THE ROLES OF LAWYERS ADMITTED TO PRACTICE IN THIS DISTRICT, THE EASTERN DISTRICT OF LOUISIANA, THE WESTERN DISTRICT OF LOUISIANA, AND VIRTUALLY EVERY OTHER DISTRICT COURT IN THE

CIRCUIT WILL FOLLOW SUIT BASED SOLELY ON MY RULING. DO YOU UNDERSTAND THAT?

BY MS. GRODNER: YES, YOUR HONOR.

BY THE COURT: NOW, ONE LAST THING I WILL ADDRESS AS WELL. AT EVERY PRE-TRIAL CONFERENCE I TELL LAWYERS, IF YOU'RE GOING TO USE -- IF YOU INTEND TO USE ELECTRONIC EVIDENCE, CONTACT PAM WELL IN ADVANCE. AND USUALLY I SAY A WEEK BEFORE TRIAL, TO MAKE SURE THAT YOUR ELECTRONICS ARE COMPATIBLE WITH MINE. WE RECEIVED FROM YOU, MS. GRODNER, THREE DISKS, WAS IT?

BY THE CLERK: YES, SIR.

BY THE COURT: THAT WE TRIED TO DOWNLOAD AND IT'S NOT COMPATIBLE WITH OUR COMPUTERS. I DON'T KNOW WHAT IT IS. ALL RIGHT? SO, WHAT I'M GOING TO ASK YOU TO DO IS, AT SOME POINT, WHENEVER PAM IS AVAILABLE, CALL PAM. EITHER YOU'RE GOING TO HAVE TO HAVE THAT INFORMATION REFORMATTED IN A WAY THAT'S USABLE IN MY COURTROOM. AND I'LL SAY THIS AGAIN. NOT ALL OF THESE DOCUMENTS ARE COMPATIBLE WITH EACH OF THE THREE COURTROOMS. WHAT MAY BE COMPATIBLE IN JUDGE DICK'S COURTROOM MAY NOT BE COMPATIBLE WITH MINE. WHICH IS WHY I ASK LAWYERS, IN FACT,

DIRECT LAWYERS, TO CONTACT PAM AT LEAST A WEEK OUT, BRING YOUR LAPTOP OVER, BRING YOUR DISK, BRING WHATEVER YOU'RE GOING TO HAVE, WHATEVER YOU'RE GOING TO USE, AND LET'S MAKE SURE THAT IT'S COMPATIBLE.

SO, LET ME JUST ASK YOU THIS. DO YOU INTEND TO USE ANY OF THESE DOCUMENTS THAT ARE IN ELECTRONIC FORM?

BY MS. GRODNER: YES, YOUR HONOR. THE MEDICAL RECORDS FOR SURE ARE IN ELECTRONIC FORMAT. AND YOU HAVE THE THREE BENCH BOOKS WITH THE JOINT EXHIBITS, OUR EXHIBITS AND DEFENSE EXHIBITS IN -- IN THE BOOKS, AS THE COURT ORDERED, DURING THE PRE-TRIAL CONFERENCE. WE DIDN'T GET THEIR EXHIBITS UNTIL YESTERDAY EVENING.

BY THE COURT: ALL RIGHT. WELL, LET ME ASK MS. COLLIER. DOES THE STATE INTEND TO PRODUCE ANY EVIDENCE IN ELECTRONIC FORMAT?

BY MS. COLLIER: YES, SIR. WE MAY DO SO. YOU SHOULD HAVE THREE DISKS THAT WERE SUBMITTED ON MONDAY.

BY THE COURT: OKAY. WHAT WE'RE GOING TO DO IS, ONCE AGAIN, FIND OUT IF THERE -- IF THEY'RE COMPATIBLE WITH OUR SYSTEM. IF NOT, YOU ALL

WILL BE NOTIFIED. AND I'M GOING TO ASK YOU TO MAKE ARRANGEMENTS WITH PAM TO COME IN AT SOME POINT AND JUST TO ENSURE THAT IT'S COMPATIBLE. OKAY?

BY MS. COLLIER: YES, SIR.

BY THE COURT: TYMARA, LET ME SEE YOU. PAM?

ALL RIGHT. LISTEN, ONE OTHER THING FOR BOTH SIDES. WHAT I'M GOING TO ASK YOU BOTH TO DO, AND I KNOW THERE'S A LOT OF MEDICAL RECORDS THAT WILL BE INTRODUCED IN THIS TRIAL. LET ME REMIND YOU THAT THOSE MEDICAL DOCUMENTS AND ANY OTHER DOCUMENTATION, FRANKLY, MUST BE PROPERLY REDACTED TO REMOVE SOCIAL SECURITY NUMBERS AND ANY -- AND OTHER PRIVACY-ACT PROTECTED INFORMATION BEFORE IT GOES TO THE JURY. ALL RIGHT?

SO, LET ME ASK YOU ALL TO ENSURE THAT WITH RESPECT TO THOSE EXHIBITS THAT YOU INTEND TO INTRODUCE AT TRIAL, THAT YOU, AGAIN, REDACT THOSE DOCUMENTS IN THE APPROPRIATE PLACES.

ANY QUESTIONS ABOUT THAT?

BY MS. GRODNER: NO, YOUR HONOR. NO QUESTION

ABOUT THE REDACTION OF THE MEDICAL RECORDS.

BY THE COURT: ANY OTHER ISSUES?

BY MS. GRODNER: YES, YOUR HONOR. YOUR HONOR,

WE DID GET THE DEFENSE EXHIBITS AT FIVE O'CLOCK YESTERDAY. WE'VE DONE NOW. THE JOINT EXHIBITS, WE HAVE A JOINT EXHIBIT LIST. WE HAVE PLAINTIFF'S EXHIBITS. WE HAVE PLAINTIFF'S EXHIBIT LIST. AND THEN WE HAVE DEFENDANTS' EXHIBITS.

BY THE COURT: WELL, LET ME ASK YOU THIS. WHY WAS -- MS. COLLIER DID THE STATE JUST PRODUCE THESE EXHIBITS, MA'AM?

BY MS. COLLIER: SHE RECEIVED THESE EXHIBITS EARLIER THROUGH DISCOVERY. BUT WE GOT OUR COPY OF THE BENCH BOOK TO HER YESTERDAY.

BY THE COURT: OKAY. BUT THESE ARE NOT DOCUMENTS THAT WERE RECENTLY JUST PRODUCED TO THE PLAINTIFF?

BY MS. COLLIER: THERE'S NOTHING NEW.

BY THE COURT: ALL RIGHT. OKAY. SO, MS. GRODNER, I MEAN, THIS IS -- AND WAS THIS -- AND I WANT TO BE CLEAR, AND MY STAFF WILL TELL ME. DID THE STATE PREVIOUSLY PRODUCE ITS OWN BENCH BOOKS?

BY MS. GRODNER: THEY DID NOT. BUT WE DISCUSSED THIS AT THE PRE-TRIAL CONFERENCE. I DID NOT HAVE ALL OF THEIR EXHIBITS THAT THEY INTENDED TO OFFER.

BY THE COURT: THAT'S NOT MY QUESTION. MY QUESTION IS, DID THE STATE PRODUCE ITS OWN BENCH BOOK BY THE DEADLINE ON MONDAY, THE 16TH? YES OR NO, MS. COLLIER?

BY MS. COLLIER: YES, SIR. WE DID.

BY THE COURT: ALL RIGHT. SO, I DON'T UNDERSTAND, MS. GRODNER. TYPICALLY WHAT HAPPENS IS THIS. THE PLAINTIFF WILL PRODUCE A BENCH BOOK AND THE DEFENSE WILL PRODUCE A BENCH BOOK. SOMETIMES THERE WILL BE A JOINT BENCH BOOK THAT WILL CONTAIN JOINT EXHIBITS. BUT IF THERE'S NOT, AND SOMETIMES THERE'S SOME DUPLICATION OF THAT. WE'LL GET -- THE STATE EXHIBITS FROM BOTH SIDES. BUT EVERYBODY PRODUCES THOSE BENCH BOOKS BY THE DEADLINE.

BY MS. GRODNER: YOUR HONOR, MY NOTES AND WHAT I UNDERSTOOD FROM THE PRE-TRIAL CONFERENCE IS THAT YOU WANTED ONE BOOK WITH JOINT -- WITH PLAINTIFFS AND WITH DEFENDANTS. AND I -- AND I WENT BACK AND DOUBLE CHECKED MY NOTES. AND I -- I'M SORRY THAT YOU MISUNDERSTOOD THAT YOU WANTED SEPARATE SUBMISSIONS BY BOTH PARTIES. I -- THAT'S A MISUNDERSTANDING ON MY PART. I -- I -- THAT'S WHAT I UNDERSTAND YOU TO -- TO SAY THAT YOU WANTED AT CONFERENCE. SO.

BY THE COURT: SO, WHAT'S THE ISSUE? WHAT'S THE ---

BY MS. GRODNER: SO, I'M UNDERSTANDING NOW. I JUST WANT TO BE CLEAR THAT WE DON'T NEED TO DO THE JOINT EXHIBITS. WE JUST NEED TO HAVE OUR EXHIBITS MARKED AND READY AND SUBMITTED.

BY THE COURT: CORRECT.

BY MS. GRODNER: AND THE THREE-RING BINDER OR ON A CD, BECAUSE THERE WAS SOME CONFUSION THERE, ALSO, WHETHER YOUR HONOR WANTS THREE-RING BINDERS. BECAUSE I HAD THAT IN MY NOTES, TOO, THAT YOU WANTED THREE-RING BINDERS.

BY THE COURT: WHAT I TELL EVERYONE IS THAT IF YOU HAVE BETWEEN 50, UP TO 100 PAGES, I'D PREFER, AT LEAST FOR MY PURPOSES AT TRIAL, TO HAVE PAPER. BECAUSE THE JURIES PREFER -- OFTEN PREFER PAPER. OKAY? BUT IF IT'S OVER 100 PAGES GIVEN TO ME ON A DISK, BECAUSE I DON'T WANT MORE THAN 100 PIECES OF PAPER AT MY BENCH. BUT THE FIFTH CIRCUIT WILL REQUIRE PAPER. THE FIFTH CIRCUIT, AT LEAST AT THIS STAGE, THEY'RE CONSIDERING CHANGING THE POLICY, BUT RIGHT NOW THE FIFTH CIRCUIT WANTS EVERYTHING IN HARD COPY. ALL RIGHT?

SO, IF YOU HAVE THE EXHIBITS IN HARD COPY,

YOU CAN GIVE THEM TO ME NOW. IF YOU HAVE THEM ON DISK, I KNOW THERE'S A DISK THAT PRESUMABLY YOU ATTEMPTED TO PRODUCE TO ME ON MONDAY AFTERNOON, AFTER HOURS, CORRECT?

BY MS. GRODNER: ON -- ON MONDAY WHEN WE GOT -- WE GOT AN ORDER FROM YOUR HONOR TO IMMEDIATELY PRODUCE.

BY THE COURT: CORRECT.

BY MS. GRODNER: AND, SO, ALL WE DID, YOUR HONOR, WAS JUST GIVE YOU OUR EXHIBITS ON THE CD'S. BUT THAT -- THAT WAS NOT IN STRICT COMPLIANCE WITH WHAT I UNDERSTOOD FROM THE PRE-TRIAL CONFERENCE. WE DIDN'T GET THEIR EXHIBITS UNTIL FIVE O'CLOCK YESTERDAY. AND WE WORKED THIS MORNING TO BRING THE BOOK INTO COMPLIANCE WITH THE JOINT, THE PLAINTIFFS AND THE DEFENDANTS AS TO WHAT I UNDERSTOOD THAT YOUR HONOR WAS LOOKING FOR IN THE BOOKS. SO, ---

BY THE COURT: LET ME JUST -- JUST GIVE ME YOUR EXHIBITS RIGHT NOW, MS. GRODNER. I'LL SORT IT OUT AT TRIAL. JUST GIVE ME YOUR -- JUST GIVE ME YOUR EXHIBITS. OKAY?

BY MS. GRODNER: OKAY, YOUR HONOR. WE HAVE JOINT EXHIBITS, WHICH ARE -- WHICH BOTH PARTIES HAVE LISTED. AND THEN WE DID NOT DOUBLE

LIST THINGS THAT WERE JOINT IN OUR EXHIBITS.

MOREOVER, YOUR HONOR, I UNDERSTOOD YOU TO SAY THAT YOU WANTED EVERYTHING BATES STAMPED.

BY THE COURT: CORRECT.

BY MS. GRODNER: SO, WE TOOK THE JOINT EXHIBITS,

THOSE ARE BATES STAMPED. WE HAVE A LEDGER FOR THOSE. IT SHOWS THE BATES STAMPED FOR THE JOINT, WHAT THEIR -- WHAT THEIR NUMBERS ARE AND WHAT EACH EXHIBIT IS WITH THE BATES STAMP. WE HAVE -- THE PLAINTIFF'S EXHIBITS ARE BATES STAMPED. AND WE BATES STAMPED THE DEFENDANTS' EXHIBITS, ALSO.

NOW, BECAUSE WE HAD JOINT EXHIBITS THAT BOTH PARTIES WERE OFFERING, THE DEFENSE EXHIBITS ARE NOT -- IF THERE WAS A JOINT EXHIBIT, IT'S NOT ALSO, AGAIN, INCLUDED IN THE DEFENSE EXHIBITS.

SO, THE NUMBERING THAT -- THAT -- IN THE LEDGER THAT WE HAVE FOR THE DEFENSE EXHIBITS AND THEIR DEFENSE NUMBERS ARE NOT THE SAME AS WHAT THEY PUT ON THE CD THAT THEY BROUGHT TO THE COURT THAT WE DIDN'T GET UNTIL FIVE O'CLOCK YESTERDAY.

BY THE COURT: ALL RIGHT. I'M GOING TO ASK YOU

ALL TO JUST WORK IT OUT. WHAT I DON'T WANT

-- I DON'T WANT IT TO BE CONFUSED. I DON'T WANT THERE TO BE ANY CONFUSION IN THE RECORD. I CERTAINLY DON'T WANT THE JURY TO BE CONFUSED.

SO, YOU ALL TALK ABOUT IT AMONG YOURSELVES. BY CLOSE OF BUSINESS TODAY I'M GOING TO ORDER YOU TO WORK OUT THE EXHIBIT NUMBERING SYSTEM. I CAN'T BELIEVE THAT I'VE GOT TO DO THAT, BUT I GUESS I HAVE TO. SO, AGAIN, I EXPECT SOMETHING TO BE FILED -- TO BE AT LEAST PROVIDED TO THIS COURT BY 9:00 A.M. TOMORROW MORNING. OKAY?

BY MS. GRODNER: THANK YOU, YOUR HONOR.

BY THE COURT: OKAY.

BY MS. GRODNER: I WILL WORK WITH MS. COLLIER

AND WE WILL GET THIS STRAIGHT. AND I APOLOGIZE FOR STRESSING YOUR STAFF AND -- AND NOT HAVING THIS DONE THE WAY YOUR HONOR WANTED IT ON THE 16TH, AS YOUR HONOR HAD ORDERED.

YOUR HONOR, THE ONLY REMAINING ISSUE IS WITH THE AD TESTIFICANDUM MOTION THAT WE FILED UNOPPOSED, WHICH SHOULD HAVE BEEN EX PARTE. BUT I DON'T THINK THAT WE HAVE, AND MAYBE YOUR MINUTE CLERK CAN LET US KNOW. I DON'T THINK THERE'S ANYTHING IN THE RECORD, AN ORDER FROM YOUR HONOR, THAT'S -- THAT WAS ISSUED TO -- TO ANYBODY AT DOC OR ANY FACILITY, DCI OR

OTHERWISE, AND I CAN DOUBLE CHECK THE RECORD, FOR INMATE WITNESSES TO BE PRODUCED ON MONDAY.

OUR MOTION WAS FILED FOR -- FOR VIDEO SOME TIME BACK. AND THE COURT JUST RULED ON THAT. I THINK IT WAS --

BY THE COURT: YES, I -- AGAIN, I --

BY MS. GRODNER: -- AND, SO, ---

BY THE COURT: -- I WON'T REPEAT THE REASONS FOR THAT RULING. BUT YOU READ MY ORDER AND YOU KNOW WHY I DENIED THE MOTION.

AGAIN, I MADE A NUMBER OF RULINGS TODAY ON WHAT WILL AND WILL NOT COME INTO EVIDENCE. I ASSUME THAT AMONG THE VARIOUS INMATE WITNESSES THAT ARE THE SUBJECT OF THE MOTION FOR THE ISSUANCE OF THE SUBPOENAS, THAT AGAIN, GIVEN MY RULING, IS NO LONGER NECESSARY TO BRING IN ALL OF THOSE INMATES, CORRECT?

BY MS. GRODNER: CORRECT, YOUR HONOR. BUT ---

BY THE COURT: WHAT I'M ASKING YOU TO DO IS, BASED UPON MY RULING, THAT YOU CONFER WITH THE DEFENDANTS AND DETERMINE WHICH OF THESE FOLKS MUST COME IN AND WHO WILL OFFER TESTIMONY THAT IS CONSISTENT WITH MY RULINGS. I DON'T WANT TO ORDER AND I WILL NOT ORDER THE DOC TO PRODUCE ALL THESE PEOPLE. IT'S GOING TO INCUR

-- THE STATE WOULD HAVE TO INCUR, I THINK, A SIGNIFICANT EXPENSE TO DO SO, ONLY TO HAVE THESE FOLKS COME HERE AND NOT TESTIFY BECAUSE THEY WON'T TESTIFY CONSISTENT WITH MY RULINGS ON THE MOTIONS.

SO, HERE'S WHAT I'M TELLING YOU, MS. GRODNER. I WILL GIVE YOU UNTIL FIVE O'CLOCK TODAY. AND I'M GOING TO DIRECT YOU TO CONFER WITH MS. COLLIER, MR. SANDERS AND OTHERS. I WILL GIVE YOU UNTIL ACTUALLY FOUR O'CLOCK, BECAUSE WE STILL HAVE TO GET THOSE OUT. I MEAN, IT'S WEDNESDAY BEFORE THE TRIAL. WE --

BY MS. GRODNER: RIGHT.

BY THE COURT: -- NEED TO NOTIFY THE DOC BY CLOSE OF BUSINESS TODAY.

SO, PAM, HOW MUCH TIME DO WE NEED TO PREPARE THOSE?

BY THE CLERK: THE CLERK'S OFFICE HAS TO PREPARE THE SUBPOENAS.

BY THE COURT: SO WHAT TIME SHOULD WE SAY? FOUR O'CLOCK?

BY THE CLERK: AT THE VERY LATEST.

BY THE COURT: ALL RIGHT. I CAN GIVE YOU UNTIL 3:30.

BY MS. GRODNER: OKAY, YOUR HONOR.

BY THE COURT: ALL RIGHT. BUT I CAN TELL YOU

RIGHT NOW, MS. GRODNER. I'M NOT GOING TO ISSUE SUBPOENAS FOR ALL OF THESE INMATES TO COME HERE. BECAUSE, AGAIN, BASED UPON WHAT I'VE LEARNED AT THIS HEARING AND IN THE PLEADINGS, I'M NOT GOING TO ALLOW THEIR TESTIMONY ANYWAY.

YES. RIGHT. THERE ARE LOGISTICAL ISSUES, AS MY CLERK HAS POINTED OUT. I'M -- I MEAN, THIS IS NOT THE SOUTHERN DISTRICT OF FLORIDA, WHERE THE MARSHAL SERVICE HAS 25 HOLDING FACILITIES. EACH OF THESE INMATE WITNESSES MUST BE SEGREGATED. WE DON'T HAVE THAT SPACE HERE IN THE COURTHOUSE TO DO IT.

SO, I MEAN, FOR ALL KINDS OF REASONS, INCLUDING LOGISTICAL REASONS, SECURITY REASONS OF THIS COURT, PUTTING ASIDE WHATEVER CONCERNS THE STATE HAS. AGAIN, FUNDAMENTALLY, MANY OF THOSE FOLKS SIMPLY WILL NOT TESTIFY CONSISTENT WITH MY RULINGS TODAY.

SO, LET US KNOW BY 3:30 THIS AFTERNOON WHICH ONES YOU WANT TO CALL, AND WE'LL CONSIDER ISSUING THE SUBPOENAS.

BY MS. GRODNER: SO, YOUR HONOR, JUST TO BE

ABSOLUTELY CLEAR. YOU'RE LOOKING FOR A MOTION AND ORDER. AND THAT ORDER NEEDS TO BE A

SEPARATE FOR -- LIKE IF IT'S DCI AND ANGOLA, IT NEEDS TO BE A SEPARATE ORDER FOR DCI, A SEPARATE ORDER FOR ANGOLA?

BY THE COURT: WHEREVER THEY ARE. YES. IT'S GOING TO HAVE TO BE SEPARATE. BECAUSE THEY WILL GO TO ---

BY MS. GRODNER: I THINK IT'S ALL DCI. BUT I JUST WANTED TO BE CLEAR.

BY THE COURT: RIGHT. CORRECT.

BY MS. GRODNER: AND, YOUR HONOR, I WANT TO APOLOGIZE TO MS. COLLIER IN THAT WE PUT THAT IT WAS -- THE MOTION WAS UNOPPOSED WHEN, IN FACT, WE SHOULD NOT HAVE LISTED IT AS UNOPPOSED WITHOUT FIRST CONTACTING HER OFFICE. AND -- AND WE DO APOLOGIZE FOR -- FOR HAVING THAT IN THE MOTIONS UNOPPOSED RATHER THAN SAYING EX PARTE. IT WAS A CARELESS BUT SERIOUS ERROR, AND WE APOLOGIZE TO MS. COLLIER, TO THE AG'S OFFICE AND TO THIS COURT.

BY THE COURT: IT WAS A VERY SERIOUS ERROR, MS. GRODNER. AND LET ME JUST TELL YOU THAT, YOU KNOW, MISREPRESENTING INMATES UNDER THESE CIRCUMSTANCES IN CASES LIKE THIS IS ALWAYS VERY CHALLENGING. I'M NOT UNAWARE OF THAT. BUT AT THE SAME TIME I HAVE THE DUTY TO ENSURE THAT

EVERY PRACTITIONER IN FEDERAL COURT ABIDES BY THE VERY, VERY HIGH STANDARDS THAT HAVE LONG BEEN SET FOR PRACTITIONERS IN THE FEDERAL COURT SYSTEM. AND I SIMPLY CANNOT RELAX THOSE RULES FOR ANYONE. AGAIN, I WOULD ASK THAT GOING FORWARD THAT YOU BEAR IN MIND THAT UNDER NO CIRCUMSTANCES CAN WE PERMIT ANYONE TO NOT ABIDE BY THOSE RULES IN EVERY CASE AND AT ALL TIMES.

ALL RIGHT. IS THERE ANYTHING FURTHER? HEARING NOTHING, COURT IS ADJOURNED.

REPORTER'S NOTE: (THEREFORE, AT THIS TIME, COURT IS ADJOURNED FOR THE DAY.)

C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF THE PROCEEDINGS IN THE ABOVE-ENTITLED NUMBERED MATTER.

______________________________

CLARE SMITH-NEELY, CCR

OFFICIAL COURT REPORTER